

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HANAD ABDI and JOHAN BARRIOS RAMOS,
on behalf of himself and all other similarly situated,

       Petitioners,

  v.

ELAINE DUKE, in her official capacity as Acting
Secretary of U.S. Department of Homeland Security;
THOMAS BROPHY, in his official capacity as Acting
Director of Buffalo Field Office of Immigration and
Customs Enforcement; JEFFREY SEARLS, in his
official Capacity as Acting Administrator of the
Buffalo Federal Detention Facility; and JEFFERSON
SESSIONS, in his official capacity as Attorney
General of the United States,

       Respondents.

_____

**DECISION AND ORDER**

1:17-CV-0721 EAW

## **INTRODUCTION**

  Petitioners Hanad Abdi ("Abdi") and Johan Barrios Ramos ("Barrios Ramos")

brought this action seeking relief on behalf of themselves individually and on behalf of a

proposed class of similarly situated asylum-seekers held at the Buffalo Federal Detention

Facility in Batavia, New York. (Dkt. 17). On August 25, 2017, Petitioners moved to certify

a proposed class of all arriving asylum-seekers who have passed a credible fear interview

and who are or will be detained at the Buffalo Federal Detention Facility and who have not

been granted parole, as well as a proposed subclass of all arriving asylum-seekers who are

detained at the Buffalo Federal Detention Facility, have passed a credible fear interview,

and have been or will be detained for more than six months without a bond hearing before an immigration judge. (Dkt. 19 at 1).

On September 12, 2017, Respondents moved to dismiss for lack of jurisdiction and failure to state a claim. (Dkt. 27). Respondents then moved to stay the motion to certify the class, pending resolution of the motion to dismiss (Dkt. 33). On September 18, 2017, the Court issued a Text Order holding the briefing on the motion to certify in abeyance until further order of the Court. (Dkt. 35). On September 25, 2017, Petitioners moved for a preliminary injunction. (Dkt. 38). The Court heard argument on the motion to dismiss and the motion for a preliminary injunction on October 27, 2017. On October 30, 2017, the Court issued a Text Order denying the motion to stay the motion to certify and ordering that the briefing on the motion to certify was no longer held in abeyance. (Dkt. 52). Respondents filed their response in opposition to the motion to certify on November 13, 2017 (Dkt. 55), and Petitioners filed their reply on November 17, 2017 (Dkt. 57).

On November 17, 2017, the Court issued a Decision and Order (Dkt. 56) denying Respondents' motion to dismiss (Dkt. 27) and granting Petitioners' motion for a preliminary injunction (Dkt. 38) (the "November 17, 2017, Decision and Order"). The Court ordered Respondents to immediately adjudicate or readjudicate the parole applications of all members of the putative class, in conformance with their legal obligations, including their obligations under ICE Directive No. 11002.1: *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture* (Dec. 8, 2009) (the "ICE Directive"). (Dkt. 56 at 65). The Court also ordered Respondents to provide individualized bond hearings to members of the putative subclass who have been detained

for six months or more, as required by 8 U.S.C. § 1225(b). (*Id.* at 66). Familiarity with the November 17, 2017, Decision and Order is presumed for purposes of this Decision and Order.

On December 7, 2017, the Court held argument on the motion to certify the class. At the argument, the Court asked Respondents to submit supplemental briefing addressing where individuals taken into ICE custody are housed. On December 14, 2017, Respondents submitted a filing addressing that issue. (Dkt. 63). On December 15, 2017, Petitioners submitted a responsive filing. (Dkt. 64). Respondents submitted a reply on December 18, 2017. (Dkt. 65).

For the following reasons, the motion to certify the class (Dkt. 19) is granted.

## DISCUSSION

Although the Second Circuit has held that "the class action device should not be imported into collateral actions, at least in its full vigor as contemplated by [Federal Rule of Civil Procedure 23]," *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974), courts have held that "[h]abeas class actions are an appropriate procedural vehicle in certain limited situations," *Wang v. Reno*, 862 F. Supp. 801, 811 (E.D.N.Y. 1994). In *Sero*, the court concluded that a habeas class action was appropriately certified due to the fact that many of the class members were illiterate or poorly educated; most would not otherwise have had the benefit of counsel; and it was therefore not improbable that more than a few would not otherwise have received the relief sought. 506 F.2d at 1126. The court also considered judicial economy as a compelling reason for proceeding with a class action. *Id.*

- 3 -

Those reasons for class certification are also present in this case, and the Court concludes that certification is appropriate.

Courts that have proceeded with class claims in habeas cases have applied the Rule 23 requirements in determining whether to certify the multiparty action. *See id.* at 1126-27 (setting out and applying requirements of Rule 23(a)); *Bertrand v. Sava*, 684 F.2d 204, 219 (2d Cir. 1982) (finding no error in lower court's decision, based upon requirements of Rule 23, "to certify a class of all Haitian aliens . . . who have requested political asylum and parole, but have remained in [the] respondent's custody" (internal quotation marks omitted)); *U.S. ex rel. Walker v. Mancusi*, 338 F. Supp. 311, 315-16 (W.D.N.Y. 1971) (employing Rule 23 to certify class of 38 inmates seeking habeas relief), *aff'd*, 467 F.2d 51 (2d Cir. 1972).

Here, the parties agree that, "[i]n determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a). . . ." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). Specifically, the court must conclude that the claims meet the following requirements:

(1)  the class is so numerous that joinder of all members is impracticable;
(2)  there are questions of law or fact common to the class;
(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Then, the court may consider granting class certification where one of the scenarios set forth under Fed. R. Civ. P. 23(b)(1)-(3) is satisfied. "The party seeking

class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

## I.     Rule 23(a) Class Criteria

### A.     Implied Requirement of Ascertainability

The Court begins with Respondents' argument that Petitioners' proposed class definitions do not satisfy the implied requirement of ascertainability. *See, e.g., Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003); *People United for Children, Inc. v. City of New York*, 214 F.R.D. 252, 256 (S.D.N.Y. 2003). "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 52-53 (D. Conn. 2004) (internal quotation marks omitted) (alteration in original). Furthermore, a class should be narrowly tailored to include only aggrieved parties. *See Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75, 86 (N.D.N.Y. 2011).

First, Respondents argue that Petitioners' class definitions are overbroad, imprecise, and unascertainable insofar as they contemplate future class members. (Dkt. 55 at 25-26). Petitioners have defined the proposed class and subclass as follows:

> Proposed class: All arriving asylum-seekers who have passed a credible fear interview and who are or will be detained at the Buffalo Federal Detention Facility and who have not been granted parole.

> Proposed subclass: All arriving asylum-seekers who are detained at the Buffalo Federal Detention Facility, have passed a credible fear interview, and

have been or will be detained for more than six months without a bond
hearing before an immigration judge.

(Dkt. 19-1 at 11-12). According to Respondents, the inclusion of individuals who "will be

detained," in both the proposed class and the proposed subclass, is problematic because it

includes "countless persons who *will be detained* at [the Buffalo Federal Detention

Facility] at some unidentified point in the future," as well as "any asylum-seeker detained

[at the facility] who passed a credible fear interview—on the basis that he or she *might* be

detained for more than six months." (Dkt. 55 at 26).

In general, the fact that future members are included in a proposed class does not

pose an obstacle to certification. *See, e.g., Duprey v. Conn. Dept. of Motor Vehicles*, 191

F.R.D. 329, 338 (D. Conn. 2000) ("It is not at all uncommon for a class to include future

members, who may generally avail themselves of the same relief available to class

members who have already sustained damages."); *Ashe v. Bd. Of Elections in City of N.Y.*,

124 F.R.D. 45, 47 (E.D.N.Y. 1989) ("Nor does the fact that future members are included

pose an obstacle [to certification]."). Even so, courts routinely limit class definitions. In

*In re Currency Conversion Fee Antitrust Litig.*, 229 F.R.D. 57, 63 (S.D.N.Y. 2005), the

court declined to include in the certified class one of three proposed categories of putative

class members, because "there was no cognizable injury when this action commenced."

The third category included "cardholders whose first foreign exchange transaction on their

credit card occurred after the arbitration clause was added to their cardholder agreement

during this litigation." *Id.* The court explained that, "[w]hile a class may contain future

members, . . . an individual cannot be a putative class member if he suffers no injury or is

not under imminent threat of injury." *Id.* The individuals in the third category could not

have suffered an injury because "before these cardholders' rights in this action could have

materialized, they agreed to forego those rights" when an arbitration clause was added to

the cardholder agreement. *Id.* That case is distinguishable because, here, there has been

no intervening change in immigration law or policy that would prevent future class

members from suffering a cognizable injury.

At oral argument, Respondents cited *Strouchler v. Shah*, 286 F.R.D. 244 (S.D.N.Y.

2012) in support of their argument that the phrase "will be" should not be included in the

class definitions. In *Strouchler*, an action for improper termination of Medicaid home care

services, the petitioners sought to certify a class of individuals "whose care has been

reduced or discontinued . . . because the City Defendant has determined *or will determine*

that they do not meet the medical criteria for these services." *Id.* at 245-46 (emphasis

added). The court agreed with the defendant that that language was overbroad and instead

certified a class of individuals "whose care has been *unlawfully* reduced or discontinued

because the City Defendant has determined that they do not meet the medical criteria for

these services." *Id.* at 247 (emphasis added). In that case, the reason for the change in the

class definition was that the class, as proposed, could have included individuals whose

services were lawfully reduced or terminated. *Id.* That reasoning does not apply here and

does not pertain to Respondents' argument regarding future class members.[1] The Court

---

[1]     Respondents also cite *Rappaport v. Katz*, 62 F.R.D. 512 (S.D.N.Y. 1974), in support
of their argument that future members should not be included in the certified class. In that
case, the court held that the proposed class was "too amorphous and imprecise" and
therefore "neither distinguishable nor definable." *Id.* at 513-14 (internal quotation marks

concludes that the inclusion of future class members is appropriate in this case because they are under threat of imminent injury. *See Arey v. Providence Hospital*, 55 F.R.D. 62, 64 (D.D.C. 1972) (certifying class brought on behalf of "all black and female employees who have sought, might have sought, seek or might seek, employment and promotion by the defendant and who have been, might have been, continue to be or might be adversely affected because of their race and/or sex by defendant's employment practices"). In other words, if allowed to continue, Respondents' practice, at the Buffalo Federal Detention Facility, of failing to follow the ICE Directive when adjudicating parole requests and detaining asylum-seekers for longer than six months without a bond hearing, would necessarily impact not only those asylum-seekers presently housed at the Buffalo Federal Detention Facility, but also any future detainees.

Respondents made an additional, related argument before the Court. Respondents contend that class certification is inappropriate because members of the proposed class—both present and future detainees—are no longer under imminent threat of injury, in light of the preliminary injunction. The November 17, 2017, Decision and Order extended preliminary injunctive relief to "all members of the putative class." (Dkt. 56 at 65). However, after a decision on class certification, "the class is no longer putative: having been subjected to a legal decision, the class is either extant or not, and once a class is rendered nonexistent, then no members of that nonexistent class may reasonably rely on

---

omitted). There, the proposed class consisted of "all married and divorced men in the State of Illinois." *Id.* at 514. That proposed class is far broader and more imprecise than the proposed class in this case.

the filed action to protect their rights." *Giovanniello v. ALM Media, LLC*, No. 3:09cv1409 (JBA), 2010 WL 3528649, at *5 (D. Conn. Sept. 3, 2010), *aff'd*, 660 F.3d 587 (2d Cir. 2011), *vacated and remanded*, 568 U.S. 801 (2012), and *aff'd*, 726 F.3d 106 (2d Cir. 2013).[2] Similarly, once this Court issues its decision on the motion to certify the class, the putative class will no longer exist and the members of the once-putative class will not be able to rely on the November 17, 2017, Decision and Order to protect their rights.[3] Therefore, the fact that relief has flowed from this Court's Decision and Order is not a basis for denying class certification or limiting certification to individuals presently detained.

However, the Court will exercise its inherent power to modify the definition of the proposed subclass. *See Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015); Fed. R. Civ. P. 23(c)(4). At oral argument, Petitioners agreed to the Court's proposed alteration of the class definitions that partially addresses Respondents' concerns. The proposed subclass will be modified as follows:

> Proposed subclass: All arriving asylum-seekers who are detained at the Buffalo Federal Detention Facility, have passed a credible fear interview, and

---

[2] Although the Supreme Court vacated the judgment in *Giovanniello* in light of a more recent Supreme Court decision, on remand to the United States Court of Appeals for the Second Circuit, that court affirmed the District of Connecticut's decision and noted its agreement with the district court's reasoning with respect to what becomes of a putative class, post-decision on a motion to certify. *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117 (2d Cir. 2013).

[3] The Court will exercise its inherent authority to modify the preliminary injunction so that it applies, after certification, to the certified class and subclass. *See Museum Boutique Intercontinental, Ltd. v. Picasso*, 880 F. Supp. 153, 161 (S.D.N.Y. 1995) ("In this Circuit, when modifying or vacating a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place. . . . Thus, a district court may modify or vacate a preliminary injunction when, based on principles of equity, the modification is necessary to preserve the status quo.").

have been or will be detained for more than six months without a bond hearing before an immigration judge.

Modified subclass: All arriving asylum-seekers who are or will be detained at the Buffalo Federal Detention Facility, have passed a credible fear interview, and have been detained for more than six months without a bond hearing before an immigration judge.

The Court concludes that this change will ensure that the bond hearing requirement applies only to those individuals (both current and future detainees) who have been detained for more than six months, and therefore partially addresses Respondents' objection to the inclusion of future class members. That limitation is appropriate because, as explained in the November 17, 2017, Decision and Order, only those individuals who have been detained, pursuant to 8 U.S.C. § 1225(b), for more than six months are entitled to a bond hearing. (Dkt. 56 at 30).

## B. Numerosity

"For a court to certify a class, Rule 23(a) requires a finding that the numerosity of injured persons makes joinder of all class members 'impracticable.'" *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). "Impracticability does not mean impossibility, but rather difficulty or inconvenience." *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y. 1998). "'There is no magic minimum number that will breathe life into a class, but generally, courts will find a class sufficiently numerous when it comprises forty or more members.'" *Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 23 (E.D.N.Y. 2012) (quoting *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001)).

> [T]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.), *as amended* (Nov. 12, 2014).

Respondents have put forth no argument in their papers with respect to the numerosity requirement, and they made no such assertions at oral argument. Respondents assert in their motion papers, and reiterated before the Court, that they reserve their right to put forth a numerosity argument in the future. (Dkt. 55 at 15 n.2).

The Court concludes that Petitioners have demonstrated sufficient numerosity. In their motion to certify, Petitioners identify at least 20 asylum-seekers who received form denials following their parole requests, and who have been detained for six months or more. (*See* Dkt. 19-6 (5 detainees); Dkt. 19-7 (2 detainees); Dkt. 19-8 (3 detainees); Dkt. 19-9 (10 detainees); *but see* Dkt. 19-1 at 8 (noting that at least 25 putative class members were identified)). In their reply papers in support of the motion for a preliminary injunction, Petitioners identify "28 current members of the putative class," 22 of whom are also members of the proposed subclass. (Dkt. 51-1 at 2). Although Petitioners have not established an exact number of 40 or more class or subclass members, numerosity does not rise and fall merely by the laws of addition. *See Robidoux*, 987 F.2d at 936 ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.").

Between May 2016 and April 2017, the number of detainees held at the Buffalo Federal Detention Facility fluctuated between 519 and 620. (Dkt. 19-3 at 2, 8). Furthermore, in July 2017, about 65 detainees arrived, many of whom are believed to be asylum-seekers. (Dkt. 19-5). "The fluid composition of a prison population is particularly well-suited for class status, because, although the identity of the individuals involved may change, the nature of the wrong and the basic parameters of the group affected remain constant." *Dean v. Coughlin*, 107 F.R.D. 331, 332-33 (S.D.N.Y. 1985). "Class actions therefore generally tend to be the norm in actions such as this." *Clarkson v. Coughlin*, 783 F. Supp. 789, 797 (S.D.N.Y. 1992). Although the proposed class members in this case are not prisoners, their situation is analogous to that of prison detainees.

Furthermore, "the Second Circuit has relaxed the numerosity requirement where the putative class seeks injunctive and declaratory relief pursuant to Rule 23(b)(2)." *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (citing *Robidoux*, 987 F.2d at 935-36); *see Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (determining that numerosity was satisfied in an action involving "present and future tenants of the New York City Housing Authority," even though only 16 class members were identified because of "the fluid composition of the public housing population"). As the Fifth Circuit has succinctly stated, "[s]maller classes are less objectionable where . . . the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975); *see Penn. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 120 (noting this factor as a proper consideration when reviewing numerosity). Moreover, as here, "the ability of any one individual member of the class or the subclass

to maintain an individual suit will necessarily be limited by the simple reality that they are being detained" as part of the immigration process. *V.W. by and through Williams v. Conway*, 236 F. Supp. 3d 554, 574 (N.D.N.Y. 2017).

Therefore, the Court is satisfied that Petitioners have demonstrated the impracticality of joinder as it relates to the proposed class and subclass.

### C.    Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That requirement is satisfied where even a single issue of law or fact is common to the class, and where a classwide proceeding is capable of "generat[ing] common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). "The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

According to Petitioners, resolution of the legal implications of the ICE Directive would resolve the central issue of the proposed class, and a decision regarding the interpretation of 8 U.S.C. § 1225(b) and the legality of the prolonged detentions would resolve the claims of all members of the proposed subclass. (Dkt. 19-1 at 16). Respondents disagree and contend that Petitioners cannot establish common questions of law because no alien has a right to parole (Dkt. 55 at 20), and because bond hearings are not required for arriving aliens detained under § 1225(b)(2)(A) (*id.* at 21). Respondents misunderstand the request for relief. The relief requested by Petitioners in this litigation is not the ultimate

release on parole or bond; rather, as the Court explained in its November 17, 2017, Decision and Order, Petitioners seek compliance with certain procedural safeguards when adjudicating parole and bond determinations. (Dkt. 56 at 46-47). Those same procedural safeguards are sought on behalf of all asylum-seekers.

Respondents also contend that there is no commonality with respect to Petitioners' parole claims because the members of the proposed class have no statutory or regulatory basis for the relief they seek. (Dkt. 55 at 20). This Court has also rejected that argument pursuant to the *Accardi* doctrine. (Dkt. 56 at 63); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Next, Respondents contend that Petitioners' request to certify the class fails because the claims require individualized factual determinations and Petitioners cannot establish that common facts apply to each purported class member. (Dkt. 55 at 21-22). Respondents are incorrect in asserting that Petitioners do not demonstrate that common questions will "generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. In fact, this Court's conclusion that the Buffalo Federal Detention Facility is violating the ICE Directive would resolve the parole claims of all members of the proposed class regardless of the fact that proposed class members allege violations of various provisions of the Directive. The same is true for the bond claims of the prolonged-detention subclass. The conclusion that the Buffalo Federal Detention Facility is failing to provide required bond hearings would resolve the claims of those individuals. Accordingly, this Court concludes that Petitioners satisfy the commonality requirement of Rule 23(a)(2).

### D.    Typicality

Rule 23(a) also requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  That requirement is satisfied where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented[.]" *Robidoux*, 987 F.2d at 936-37; *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2d Cir. 1986) (typicality requirement satisfied where evidence indicated that employer discriminated "*in the same general fashion*" against class representatives and other members of class). "[M]inor variations in the fact patterns underlying individual claims" do not vitiate typicality. *Robidoux*, 987 F.2d at 937. In *V.W.*, the court found that the typicality requirement was satisfied because the claims of the class representatives and the members of the class and subclass were "based on the common application of certain challenged policies." 236 F. Supp. 3d at 576 (citing *Sykes v. Mel Harris and Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012)).

Petitioners argue that Barrios Ramos shares claims with the class and subclass that are based on Respondents' failure to follow the ICE Directive and failure to provide members of the proposed subclass with bond hearings after more than six months of detention. (Dkt. 19-1 at 17).  Respondents contend that the typicality requirement is not met because Petitioners cannot demonstrate that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove [] liability." *Easterling v. Conn. Dept. of Corr.*, 265 F.R.D. 45, 52 (D. Conn. 2010); (Dkt. 55 at 23).  As they argue with respect to commonality, Respondents contend that the

typicality requirement is not satisfied because there are factual variations between the individual cases. However, as previously noted, "minor variations in the fact patterns underlying individual claims" are not enough to negate typicality. *Robidoux*, 987 F.2d at 937. Furthermore, as discussed above, Respondents mischaracterize Petitioners' request for relief as seeking release on parole or bond.

Petitioners are correct that the claims of Barrios Ramos and the members of the proposed class and subclass arise out of Respondents' failure to follow the dictates of the ICE Directive and the implicit bond hearing requirement in 8 U.S.C. § 1225(b). The Court finds that Petitioners' claims satisfy the typicality requirement.

### E.     Adequacy of Representation

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Respondents argue that Barrios Ramos is not an adequate named representative because he has already been released on parole and his immigration proceeding has been transferred to another district. (*See* Dkt. 55 at 16-18).

According to Respondents, Barrios Ramos will be unable to vigorously pursue the class claims because his claims have been mooted and he is no longer part of the class he seeks to represent. (*Id.* at 18). As discussed in the November 17, 2017, Decision and Order, Barrios Ramos's claims are not moot because they fall within the voluntary cessation exception to the mootness doctrine, and, even if his individual claims were moot, that would not adversely affect the class action claims or Barrios Ramos's capacity to

continue litigating the class claims on behalf of the proposed class and subclass. (Dkt. 56 at 30-41); *see Monaco v. Stone*, 187 F.R.D. 50, 60 (E.D.N.Y. 1999) (applying the "inherently transitory" exception and stating that "plaintiff . . . may still act as the named representative for the proposed plaintiff class despite the loss of his individual claims[, because a] named plaintiff may still litigate a class action despite the loss of [his or her] personal stake if the claims are 'capable of repetition, yet evading review.'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980))).

At oral argument on this motion, Respondents argued that Barrios Ramos is not an adequate representative because he voluntarily removed himself from the proposed class and subclass by relocating to Miami, Florida, after his release on parole.  According to Respondents, the likelihood that Barrios Ramos would be redetained and returned to the jurisdiction of the Buffalo Federal Detention Facility is exceedingly small, making him an inappropriate class representative.  Petitioners responded that, when individuals are released to parole, the parole decision is based, in part, on the fact that an individual has a support system to both ensure that the asylum-seeker will attend future proceedings and satisfy ICE that the individual is not a flight risk.  Indeed, Barrios Ramos asserts in his most recent declaration that he is currently living in Miami with family members. (Dkt. 61 at 2).

At the oral argument, the Court asked Respondents to submit supplemental briefing addressing where individuals taken into ICE custody are housed.  Respondents have submitted a status report that includes ICE Policy 11022.1, *Detainee Transfers* (Jan. 4, 2012) (the "Transfer Policy"). (Dkt. 63-1 at 3-16).  Respondents contend that there is

nothing in the Transfer Policy that would counsel ICE to transfer Barrios Ramos, if the need for transfer arose, to the Buffalo Federal Detention Facility, and that it is therefore "highly unlikely that . . . ICE would transfer him back" to that facility. (Dkt. 63 at 2).

Although it might be unlikely that Barrios Ramos will be transferred to the Buffalo Federal Detention Facility in the future, the Transfer Policy gives ICE significant discretion in that regard. It provides that "a transfer may be deemed necessary" "[t]o transfer to a more appropriate detention facility based on the detainee's individual circumstances and risk factors." ICE Policy 11022.1, ¶ 5.2(3)(e). Furthermore, were the Court to conclude that Barrios Ramos is not an appropriate class representative, it could prove nearly impossible to find a satisfactory class representative. Detainees at the Buffalo Federal Detention Facility who fall within the proposed class and subclass definitions are unlikely to have family or a support system in the Western District of New York. In light of the fact that Respondents can elect to release a detainee to parole at any given time, it would be impracticable to require the class representative to remain in the Western District of New York, or somewhere nearby, after release, and would give Respondents significant opportunity to impede litigation of this matter.

Respondents also argue that Barrios Ramos, now that he has been released on parole and is living in Miami, does not have a vigorous interest in this litigation because he would not benefit from a resolution of this case in favor of the proposed class and subclass. However, in his most recent declaration, Barrios Ramos affirms his interest in pursuing this litigation. (Dkt. 61). He states that he "derive[s] a strong sense of purpose from being a class representative in this case" and "want[s] to help everyone in [his] situation who is

suffering because they do not have a fair opportunity for release on parole or bond." (*Id.* at ¶ 4). Barrios Ramos was imprisoned in Cuba as a result of his human rights activism, and he asserts that this litigation "is a continuation of [his] struggle for human rights." (*Id.*). The Court is satisfied that Barrios Ramos "will adequately protect the interests of the class." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

The Court also concludes that counsel in this case are capable of adequately representing the class.[4] Respondents have not offered any reason why Petitioners' counsel are not adequate to represent the class, nor does it appear that they could. Petitioners' counsel are experienced and competent. Indeed, Petitioners' counsel are familiar with and experienced in litigating federal civil rights cases in general, as well as the immigration issues specific to this case. (*See* Dkt. 19-2 at 1-2). Petitioners' counsel have also clearly been in frequent communication with the detainees at the Buffalo Federal Detention Facility (*see* Dkt. 19-6; Dkt. 19-7; Dkt. 19-8; Dkt. 19-9; *see also* Dkt. 38; Dkt. 51-1), which demonstrates substantial investigative work in developing this case. Furthermore, the Court has had the benefit of reviewing counsel's written and oral arguments thus far, and finds that counsel have, without question, demonstrated qualified and experienced legal representation in this matter.

---

[4]     In the past, this analysis occurred under Rule 23(a)(4). However, as a result of the 2003 amendments to the Federal Rules of Civil Procedure, the issue of the adequacy of class counsel is now guided by Rule 23(g). Regardless, the analysis remains the same. *Kulig v. Midland Funding, LLC*, No. 13-CV-4175 (PKC), 2014 WL 5017817, at *2 (S.D.N.Y. Sept. 26, 2014) (citations omitted); *accord, e.g., City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK)(AJP), 2017 WL 3608298, at *7 (S.D.N.Y. Aug. 22, 2017).

Therefore, the Court concludes that Petitioners have sufficiently demonstrated adequacy of representation and adequacy of counsel on the merits of their motion to certify.

## II.     Rule 23(b)(2) Class Certification Rules

"A class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (internal quotation marks and citation omitted). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of the types of actions authorized by Rule 23(b)(2). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Petitioners allege that Respondents have systematically violated the ICE Directive by failing to provide the required process, and have subjected all members of the proposed subclass to an unlawfully prolonged detention of more than six months without a bond hearing. Respondents argue that parole adjudications are "fact-specific inquiries," and that the denial of parole could rest on a number of different grounds. (Dkt. 55 at 28). Respondents also contend that the Court would be forced to "weed out" subclass members who have extended their detention during the pendency of this action as a litigation strategy, which would entail various individual adjudications. (*Id.*).

The Court disagrees with Respondents' position. Although an evaluation of each proposed class member's unique situation is necessary when adjudicating detention decisions, that is not the relief sought in this proceeding. Petitioners have demonstrated deficiencies in the procedures employed by Respondents' parole system that "stem from central and systemic failures" and apply across-the-board to each proposed class member. *See Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) ("Defendants further claim that due to the unique circumstances of each plaintiff's experience with the child welfare system, the defendants have not acted on grounds generally applicable to the class. We disagree. Insofar as the deficiencies of the child welfare system stem from central and systemic failures, the district court did not abuse its discretion in certifying a 23(b)(2) class at this stage of the litigation."); *M.G. v. N.Y. City Dep't of Educ.*, 162 F. Supp. 3d 216, 242 (S.D.N.Y. 2016) ("Systemic violations like those asserted here present a classic case for Rule 23(b)(2) certification."); *Briggs v. Bremby*, No. 12-CV-324 (VLB), 2013 WL 1987237, at *5 (D. Conn. May 13, 2013) ("Courts have long recognized that in cases, like the present one, 'alleging systemic failure of governmental bodies to properly fulfill statutory requirements, have been held to be appropriate for class certification under Rule 23(b)(2).'" (quoting *Brooklyn Center for Indep. of the Disabled v. Bloomberg*, 287 F.R.D. 240, 250 (S.D.N.Y. 2012))).

Accordingly, injunctive relief requiring Respondents to conform to the strictures of the ICE Directive will be applicable to all proposed class members. Again, the Court is not ordering the release of any particular detainee, which would certainly require a fact-specific inquiry. By contrast, the procedures set forth within the ICE Directive apply

equally to all proposed class members and injunctive relief ordering compliance with those procedures would bring all proposed class members relief from the systemic process violations inflicted by Respondents.

Similarly, ordering individualized bond hearings for detainees who have been confined for longer than six months would also apply across-the-board to all proposed subclass members. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1126 (9th Cir. 2010) ("The particular statutes controlling class members' detention may impact the viability of their individual claims for relief, but do not alter the fact that relief from a single practice is requested by all class members."). Respondents have cited to *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) and *Viknesrajah v. Koson*, No. 09-CV-6442 (CJS), 2011 WL 147901, at *6 (W.D.N.Y. Jan. 18, 2011) in arguing that multiple individual adjudications would be necessary to determine whether each individual subclass member intentionally prolonged his or her detention as a litigation strategy. (Dkt. 55 at 28). Those cases are inapposite; they arise out of claims sounding in substantive due process. As the Court held in its November 17, 2017, Decision and Order (Dkt. 56), the availability of an implicit bond hearing requirement is based upon the constitutional avoidance doctrine, which is a canon of *statutory* construction that enables a litigant to vindicate his or her *statutory* rights; it does not create constitutional rights. *See Clark v. Martinez*, 543 U.S. 371, 382 (2005). In any event, the implicit bond hearing requirement is a time-restricted *process* right, arising only after the passage of six months' time, and requires no particular *substantive* outcome at the hearing before the immigration judge. In other words, the proposed subclass members have no responsibility to justify the availability of the bond hearing

- 22 -

itself; once the six-month time limit has expired, it becomes Respondents' statutory obligation to hold a hearing and carry the burden of demonstrating—by clear and convincing evidence—why continued detention is warranted.

Therefore, the Court finds that the class claims satisfy the requirements of Rule 23(b)(2).

## CONCLUSION

IT IS HEREBY ORDERED that Petitioners' motion to certify the class (Dkt. 19) is granted, and the class and subclass are defined as follows:

Class: All arriving asylum-seekers who have passed a credible fear interview and who are or will be detained at the Buffalo Federal Detention Facility and who have not been granted parole.

Subclass: All arriving asylum-seekers who are or will be detained at the Buffalo Federal Detention Facility, have passed a credible fear interview, and have been detained for more than six months without a bond hearing before an immigration judge.

FURTHER, that, pursuant to Fed. R. Civ. P. 23(c)(1)(B), the New York Civil Liberties Foundation and the International Refugee Assistance Project are hereby appointed class counsel;

FURTHER, that the November 17, 2017, Decision and Order is hereby modified insofar as the preliminary injunction now applies to members of the certified class and subclass, rather than members of the putative class.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: December 19, 2017
     Rochester, New York