UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



HANAD ABDI and JOHAN BARRIOS RAMOS,
on behalf of himself and all other similarly situated,

               Petitioners,

    v.

KIRSTJEN NIELSEN,[1] in her official capacity as
Secretary of U.S. Department of Homeland Security;
THOMAS BROPHY, in his official capacity as Acting
Director of Buffalo Field Office of Immigration and
Customs Enforcement; JEFFREY SEARLS, in his
official Capacity as Acting Administrator of the
Buffalo Federal Detention Facility; and JEFFERSON
SESSIONS, in his official capacity as Attorney
General of the United States,

               Respondents.

**DECISION AND ORDER**

1:17-CV-0721 EAW

## PROCEDURAL BACKGROUND

Petitioners Hanad Abdi ("Abdi") and Johan Barrios Ramos ("Barrios Ramos")
brought this action seeking relief on behalf of themselves individually and on behalf of a
proposed class of similarly situated asylum-seekers held at the Buffalo Federal Detention
Facility in Batavia, New York. (Dkt. 17). On November 17, 2017, the Court issued a
Decision and Order denying Respondents' motion to dismiss and granting Petitioners'
motion for a preliminary injunction (the "November 17, 2017, Decision"). (Dkt. 56). The
Court ordered Respondents to immediately adjudicate or readjudicate the parole

---

[1]    Kirstjen Nielsen is the current United States Secretary of Homeland Security.
Accordingly, she is substituted as a respondent in this action. *See* Fed. R. Civ. P. 25(d).

- 1 -

applications of all members of the putative class of asylum-seekers detained at the Buffalo Federal Detention Facility in conformance with their legal obligations, including their obligations under ICE Directive No. 11002.1: *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture* (Dec. 8, 2009) (the "ICE Directive"). (*Id.* at 65). The Court also ordered Respondents to provide individualized bond hearings to members of the putative subclass who have been detained for six months or more, as required by 8 U.S.C. § 1225(b). (*Id.* at 66). Familiarity with the November 17, 2017, Decision is presumed for purposes of this Decision and Order.

Thereafter, on December 19, 2017, the Court issued a Decision and Order granting Petitioners' motion for class certification. (Dkt. 66). Specifically, the Court defined the certified class as follows: "All arriving asylum-seekers who have passed a credible fear interview and who are or will be detained at the Buffalo Federal Detention Facility and who have not been granted parole." (*Id.* at 23). The Court also defined the certified subclass as follows: "All arriving asylum-seekers who are or will be detained at the Buffalo Federal Detention Facility, have passed a credible fear interview, and have been detained for more than six months without a bond hearing before an immigration judge." (*Id.*).

On January 8, 2018, Petitioners filed a motion to clarify the preliminary injunction (Dkt. 67), and a motion to expedite consideration of their motion to clarify (Dkt. 68). The Court granted, in part, Petitioners' motion to expedite, setting a briefing schedule for response and reply papers as well as a motion hearing date of January 26, 2018. (Dkt. 73). On January 11, 2018, Respondents filed an interlocutory appeal from this Court's November 17, 2017, Decision. (Dkt. 74). Respondents have since submitted response

- 2 -

papers in opposition to Petitioners' motion to clarify (Dkt. 76), and Petitioners have submitted reply papers (Dkt. 78). On January 26, 2018, the Court held argument on the motion to clarify and reserved decision.

During oral argument, Respondents contended that the Court should not decide the motion without reviewing transcripts of the bond proceedings held before the Immigration Judges ("IJ"), which Respondents had neither submitted nor prepared in connection with this motion. The Court granted Respondents an opportunity to file a supplemental submission containing these transcripts. The Court has since received and reviewed the transcripts of the bond hearings of five subclass members.

Before turning to the substantive issues raised by Petitioners' motion for clarification, the Court emphasizes the narrow scope of Petitioners' motion. Petitioners do not argue that any particular subclass member is *entitled* to alternative conditions of release or a reduction in the amount of bond. The sole question put to this Court is whether the November 17, 2017, Decision requires an IJ conducting a *Lora*-style bond hearing to consider alternative conditions of release and a detainee's ability to pay in setting bond after determining that release of the subclass member is appropriate. The Court answers that question in the affirmative, and, for the following reasons, the motion to clarify the preliminary injunction (Dkt. 67) is granted.

## DISCUSSION

## I.    Jurisdiction Pending Interlocutory Appeal

The Court first addresses its jurisdiction to entertain Petitioners' motion in view of

Respondents' pending appeal. "Generally, the filing of an effective notice of appeal divests

the court of jurisdiction over the case." *Exp.-Imp. Bank of Republic of China v. Cent. Bank*

*of Liberia*, No. 1:15-CV-09565 (ALC), 2017 WL 6398726, at *2 (S.D.N.Y. Dec. 13, 2017)

(citing *Negron v. United States*, 394 F. App'x 788, 792 (2d Cir. 2010)). "[O]nce a notice

of appeal has been filed, a district court . . . may not 'adjudicate substantial rights directly

involved in the appeal.'" *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E.*

*Air Lines, Inc.*, 847 F.2d 1014, 1017 (2d Cir. 1988) (quoting *Newton v. Consol. Gas Co.*,

258 U.S. 165, 177 (1922)). However, "[a] trial court has a long established right to make

orders appropriate to preserve the *status quo* while a case is pending on appeal. This right

is codified by Fed. R. Civ. P. 62(c)." *Barringer v. Griffes*, 810 F. Supp. 119, 120 (D. Vt.

1992) (citation and footnote omitted); *see Cullman Ventures, Inc. v. Columbian Art Works,*

*Inc.*, No. 89 CIV. 312(KC), 1989 WL 94902, at *3 (S.D.N.Y. July 28, 1989) ("[T]his Court

has jurisdiction, notwithstanding the Notice of Appeal, to supervise the enforcement of its

injunction and to preserve the status quo pending appeal."); 11 Charles A. Wright, et al.,

Federal Practice & Procedure § 2904, at 675 (3d ed. 2012) (stating that Rule 62(c) "codifies

the inherent power of courts to make whatever order is deemed necessary to preserve the

status quo and to ensure the effectiveness of the eventual judgment").

Rule 62(c) of the Federal Rules of Civil Procedure provides that "[w]hile an appeal

is pending from an interlocutory order or final judgment that grants, dissolves, or denies

an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." "The district court's power to modify an injunction to preserve the status quo necessarily includes the lesser power to clarify the injunction to supervise compliance." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 29 (D.D.C. 2013); *see Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir. 1994) ("[The defendant] also contends that the district court lacked jurisdiction to issue its amended order, which broadened the scope of injunctive relief, because an appeal had already been taken from the original order. As the district court issued the amended order to clarify its original injunction and to supervise compliance in the wake of [the plaintiff]'s motion for contempt, it did not lack jurisdiction.").

Although the parties' submissions do not discuss the effect of Respondents' interlocutory appeal on this Court's jurisdiction to entertain Petitioners' motion to clarify, the Court finds that it has jurisdiction to resolve Petitioners' motion pursuant to its intrinsic authority to supervise compliance with its original order, and "to ensure the effectiveness of the eventual judgment." Wright, et al., § 2904, at 675; *see Wash. Metro. Area Transit Comm'n*, 985 F. Supp. 2d at 29; *Cullman Ventures, Inc.*, 1989 WL 94902, at *3; *see also Does 1-10 v. Univ. of Wash.*, No. C16-1212JLR, 2018 WL 453451, at *2 (W.D. Wash. Jan. 17, 2018) (applying Rule 62(c) to a motion to clarify). As will be discussed below, Petitioners' motion to clarify does not raise new claims, but rather seeks clarification of the scope and effect of the Court's November 17, 2017, Decision. (Dkt. 67). Whether the Court's original order requires an IJ to consider the financial circumstances of each

subclass member or alternatives to detention so as to properly effectuate the injunctive relief granted therein is a question fully within this Court's jurisdiction to answer in order "to supervise the enforcement of its injunction and to preserve the status quo pending appeal." *Cullman Ventures, Inc.*, 1989 WL 94902, at *3; *see also Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) ("There is also no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen. The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief."); *Meinhold*, 34 F.3d at 1480 n.14 (determining that the district court "did not lack jurisdiction" to issue an "amended order to clarify its original injunction and to supervise compliance").

Furthermore, a decision on this clarification motion will not "adjudicate substantial rights directly involved in the appeal." *Newton*, 258 U.S. at 177. The Court finds that an IJ's consideration of the subclass members' financial circumstances and alternatives to detention is imperative to the effective enforcement of the injunctive relief set forth in its November 17, 2017, Decision. Indeed, permitting the calculation of bond without requiring consideration of the detainee's ability to pay effectively erodes any legitimate governmental interests justifying continued detention that are set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). In light of Petitioners' submissions demonstrating that IJs have not taken these factors into account

in several of the *Lora*-style bond hearings conducted after this Court's November 17, 2017, Decision (*see* Dkt. 67-3), this Court is obligated to clarify what it had assumed went part and parcel with its original order.

Therefore, the Court has jurisdiction over Petitioners' motion to clarify notwithstanding Respondents' interlocutory appeal of the November 17, 2017, Decision, pursuant to its inherent authority to supervise compliance with the injunctive relief granted therein.

## II. The Issues Raised in Petitioners' Motion are Related to the Claims Asserted in the Amended Petition and the Motion for Preliminary Injunction and are Meritorious

Petitioners contend that, although it is not explicitly stated in the Court's November 17, 2017, Decision, the preliminary injunction requires IJs, in setting bond, to consider alternative conditions of release as well as the detainee's ability to pay once the IJ has determined that release is appropriate. Petitioners ask the Court to clarify as much. (Dkt. 67-1 at 12). Respondents argue that Petitioners are not asking for clarification of the preliminary injunction, but rather are seeking entirely new relief based on facts that occurred only after this Court issued the preliminary injunction. (Dkt. 76 at 9). According to Respondents, Petitioners have raised new claims and facts that are beyond the scope of the amended petition, are outside the requirements of the preliminary injunction, and are unrelated to the requirements that the Second Circuit imposed in *Lora*, the case on which this Court largely based the bond portion of its preliminary injunction decision. (*Id.* at 10). Respondents further argue that the requested relief would not have been available to Petitioners even if raised in their motion for a preliminary injunction, because there is no

relationship between the injury claimed here and the conduct that gave rise to the petition. (*Id.* at 10-11).

Respondents also argue, in the alternative, that Petitioners' motion for clarification fails on the merits because there is no requirement that an IJ consider an asylum-seeker's ability to pay or alternatives to detention in setting bail. (*Id.* at 15-17). Respondents take the position that an IJ *may* consider an alien's ability to pay, as well as alternative conditions of release, but that there is no Supreme Court, Second Circuit, or Board of Immigration Appeals ("BIA") precedent that requires the IJ to do so. (*Id.* at 15). Because the Court's resolution of that argument is inextricably linked with Respondents' argument that the relief requested in the motion for clarification is outside the scope of the preliminary injunction and the amended petition, the Court will address those arguments together.

In its November 17, 2017, Decision, the Court ordered Respondents to provide members of the class who have been detained for six months or more with individualized bond hearings, in conformance with *Lora*. (Dkt. 56 at 66). The Court found persuasive the reasoning of the majority of the courts in this Circuit, as well as the reasoning articulated by the Ninth Circuit in *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ("*Rodriguez II*"), and *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) ("*Rodriguez III*"). (*Id.* at 30). That case law recognizes that prolonged detention is permissible only when it serves legitimate governmental interests. The failure to consider alternative conditions of release and ability to pay undermines the connection between the bond amount and the legitimate governmental interests that might weigh against release.

- 8 -

Accordingly, for the following reasons, the Court now concludes that implicit in its November 17, 2017, Decision is a requirement that once an IJ has determined that release is appropriate and bond should be set, the IJ must consider the detainee's ability to pay, as well as alternative conditions of release, in setting the amount of bond. Thus, Petitioners' motion to clarify does not raise new claims and facts beyond the scope of the amended petition.

In *Lora*, the Second Circuit held that, "in order to avoid serious constitutional concerns raised by indefinite detention, an immigrant detained pursuant to [8 U.S.C. § 1226(c)] must be afforded a bail hearing before an immigration judge within six months of his or her detention." 804 F.3d at 616. The court quoted Justice Kennedy's concurrence in *Demore v. Kim*, 538 U.S. 510, 532-33 (2003), which observed that, "[w]ere there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Lora*, 804 F.3d at 613 (alteration in original). After *Lora*, the majority of district courts in this Circuit, including this Court, determined that prolonged detention of an asylum-seeker held under 8 U.S.C. § 1225(b) raises similar concerns and therefore interpreted *Lora* to extend to cases pertaining to the detention of asylum-seekers held under that statute. (*See* Dkt. 56 at 27-28 (gathering cases)).

The court in *Lora* did not address the question of whether an IJ, in setting bond, must consider a detainee's ability to pay, and neither did most of the district courts that subsequently relied on *Lora*. However, a district judge in the Southern District of New

York answered that question in a ruling from the bench, interpreting *Lora* to require that "an immigration judge . . . consider a detainee's financial circumstances in setting bail." Transcript of Oral Argument at 8, *Celestin v. Decker*, 17 Civ. 2419 (S.D.N.Y. June 14, 2017). The *Celestin* court reasoned that "setting bond in an amount a person cannot pay would essentially be a denial of bond," and "[d]enial of bond not due to evidence that the immigrant poses a risk of flight or a risk of danger to the community contravenes the mandates and the logic of *Lora*. . . ." *Id.*; *see also Leslie v. Holder*, 865 F. Supp. 2d 627, 630 n.1 (M.D. Pa. 2012) (stating imposition of bail which the agency knows cannot be met is tantamount to detention). The *Celestin* court further noted that the "failure to consider [ability to pay] creates a significant risk that detainees will be deprived of liberty solely based on indigence," Transcript of Oral Argument at 8, *Celestin*, 17 Civ. 2419, which is prohibited in the criminal context, *see Williams v. Illinois*, 399 U.S. 235, 244 (1970) (holding "that the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status"); *see also Bearden v. Georgia*, 461 U.S. 660, 668 (1983) (holding it is "fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available" when the defendant cannot pay his fine or restitution "through no fault of his own"); *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (holding detention of an indigent "for inability to post money bail" is impermissible if the individual's "appearance at trial could reasonably be assured by one of the alternate forms of release"); *Coleman v. Hennessy*, No. 17-CV-06503-EMC, 2018 WL 541091, at *1 (N.D. Cal. Jan. 5, 2018)

(holding state court erred in "failing to inquire into [the petitioner's] ability to pay the $200,000 bond" or other alternatives to pretrial incarceration); *United States v. Polouizzi*, 697 F. Supp. 2d 381, 388 (E.D.N.Y. 2010) ("The Supreme Court has defined 'excessive bail' under the Eighth Amendment as 'bail set at a figure higher than an amount reasonably calculated to fulfill [its] purpose.'" (quoting *Stack v. Boyle*, 342 U.S. 1 (1951))); *Lyman v. City of Albany*, 536 F. Supp. 2d 242, 251 (N.D.N.Y. 2008) (bail not excessive where amount was set at $400 and the plaintiff was able to secure release on bail on day of arrest).

In reaching its conclusion, the court in *Celestin* cited the Ninth Circuit's decision in *Rodriguez III*. Transcript of Oral Argument at 11, *Celestin*, 17 Civ. 2419. In that case, the Ninth Circuit considered whether the district court had erroneously held—in its order entering a permanent injunction—that immigration judges must consider alternatives to detention in setting the amount of bond. *Rodriguez III*, 804 F.2d at 1087. The court affirmed the permanent injunction and stated that the immigration judge "must decide whether any restrictions short of detention would further the government's interest in continued detention." *Id.* at 1088.

More recently, in *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), decided in October 2017, the government appealed the district court's grant of a preliminary injunction against the government's policy of failing to consider a detainee's financial circumstances in setting the amount of a bond or non-monetary alternative conditions of release. *Id.* at 982. The Ninth Circuit affirmed, explaining that the detainees had been determined to be "neither dangerous nor so great a flight risk as to require detention without bond," and held that, under those circumstances, "consideration of the detainees' financial

circumstances, as well as of possible alternative release conditions," is "necessary to ensure that the conditions of their release will be reasonably related to the governmental interest in ensuring their appearance at future hearings." *Id.* at 990-91. The court acknowledged the government's "legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings" but cautioned that "any detention incidental to removal must 'bear[] [a] reasonable relation to [its] purpose.'" *Id.* at 990 (quoting *Zadvydas*, 533 U.S. at 690). The court then made the following observation:

> Since the government's purpose in conditioning release on the posting of a bond in a certain amount is "to provide enough incentive" for released detainees to appear in the future, we cannot understand why it would ever refuse to consider financial circumstances: the amount of bond that is reasonably likely to secure the appearance of an indigent person obviously differs from the amount that is reasonably likely to secure a wealthy person's appearance.

*Id.* at 991.

Respondents argue that *Hernandez* is distinguishable because that case involved a class of aliens detained under § 1226(a).[2] (*See* Dkt. 76 at 16-17 n.6). In *Lora*, the Second Circuit interpreted a different statute—§ 1226(c)—to contain an implicit time restriction of six months, after which an alien detained under that provision is entitled to a bond

---

[2]     Section 1226 "regulates the detention of aliens who are facing removal due to past criminal convictions. Generally, immigration detention is authorized by § 1226(a), which provides for individualized review of detention decisions. Aliens detained pursuant to § 1226(a) may be released on bond or conditional parole while their immigration case is resolved." *Figueroa v. Aviles*, No. 14 Civ. 9360(AT)(HBP), 2015 WL 464168, at *1 (S.D.N.Y. Jan. 29, 2015); *see Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016) ("8 U.S.C. § 1226(a) authorizes the detention of an alien 'pending a decision on whether the alien is to be removed from the United States'; under this section, ICE may detain an alien or release him subject to parole or a bond. If ICE elects to detain the alien, the alien may request a bond hearing before an IJ." (quoting 8 C.F.R. § 1236.1(d)(1))).

hearing, "in order to avoid the constitutional concerns raised by indefinite detention." *Lora*, 804 F.3d at 616. Unlike *Lora*, the holding in *Hernandez* is based directly on the dictates of due process rather than the constitutional avoidance doctrine. *See Hernandez*, 872 F.3d at 982 n.4 ("The § 1226(a) claim is presented exclusively in terms of constitutional avoidance, a doctrine which is inapplicable here.").

As this Court noted in its November 17, 2017, Decision, the constitutional rights of the asylum-seekers at issue in the instant matter are limited. (Dkt. 56 at 66); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Correa v. Thornburgh*, 901 F.2d 1166, 1171 n.5 (2d Cir. 1990). However, the Court also determined that because both non-resident arriving aliens and lawful permanent residents ("LPRs") can be detained under § 1225(b), the constitutional avoidance doctrine requires *Lora*-style bond hearings for aliens detained under § 1225(b) in order to avoid "serious constitutional concerns." (Dkt. 56 at 63). Accordingly, Respondents' argument that *Hernandez* is distinguishable because it addressed a class of aliens detained under § 1226(a) is inconsistent with this Court's determination in its November 17, 2017, Decision. The same due process concerns implicated by a detainee's prolonged detention under § 1226(a) are also raised by an LPR's prolonged detention under § 1225(b). *See Nguti v. Sessions*, 259 F. Supp. 3d 6, 14 (W.D.N.Y. 2017) (applying *Lora* to § 1226(a) and relying on decisions applying the constitutional avoidance doctrine to extend *Lora* to detention pursuant to § 1225(b) to "confirm th[e c]ourt's conclusions"), *appeal withdrawn*, No. 17-2086, 2018 WL 286590 (2d Cir. Jan. 3, 2018); *see also Brevil v. Jones*, No. 17 Civ. 1529 (LTS) (GWG), 2018 WL 514670, at *6 (S.D.N.Y. Jan. 22, 2018) (noting that the government's argument that *Lora*

did not apply to § 1226(a) "ignores the Second Circuit's express adoption of the Ninth Circuit's due process analysis in [*Rodriguez II*], a case which extended *Lora*-like procedural protections to § 1226(c) detainees after doing so for § 1226(a) detainees"). By extension, in clarifying its original preliminary injunction order, the Court finds that the constitutional avoidance doctrine mandates that the Court construe § 1225(b) in a similar manner here. In other words, the Court clarifies the November 17, 2017, Decision to "avoid" the due process concerns discussed in *Hernandez*, which are equally applicable to detentions pursuant to § 1225(b).

Next, Respondents contend that this Court should not require IJs to consider ability to pay and alternative conditions of release because IJs have significant discretion in setting bond. They primarily cite to BIA cases to support their position. In *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)—the leading BIA case on this issue—the BIA explained that "[a]n Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations." *See also* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or [ICE]."). Those factors "may include any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise

escape from authorities; and (9) the alien's manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40. In *Guerra*, the BIA concluded that it was reasonable for the IJ to deny bond on the basis that evidence of the individual's serious criminal activity, although it had not resulted in a conviction, outweighed other factors. *Id.*

However, read in their entirety, the BIA cases cited by Respondents support the notion that IJs should consider ability to pay and alternative conditions of release in setting bond. Although the BIA certainly has not required IJs to consider ability to pay (see administrative exhaustion section, below), based on its discussion of the factors that IJs should consider, coupled with the Second Circuit's decision in *Lora*, the Court concludes that it is reasonable to hold that IJs must consider the detainee's financial situation in setting bond.

In *Guerra*, the BIA explained that "Immigration Judges may look to a number of factors in determining whether an alien merits release from bond, *as well as the amount of bond that is appropriate*." *Id.* (emphasis added). In *Matter of Urena*, 25 I. & N. Dec. 140 (BIA 2009), the BIA explained that the "setting of bond is designed to ensure an alien's presence at proceedings." *Id.* at 141. Once the detainee has established that he "would not pose a danger to property or persons," the IJ "decide[s] the amount of bond necessary to ensure the [individual's] presence at proceedings" in the future. *Id.* at 141-42. Those cases suggest that IJs have significant discretion to determine whether release on bond is appropriate. Once such a determination is made, the IJ's next task is to set bond in an

amount that is "appropriate" and "necessary" to effectuate the government's interest in deterring flight while protecting the detainee's liberty interests.

Although most of the factors that IJs consider in making bond determinations are discretionary, the Court concludes that once an IJ determines that release of the detainee is appropriate, an IJ *must* consider ability to pay and alternative conditions of release in setting bond for an individual detained under § 1225(b). Constitutional concerns compel that conclusion. As the Ninth Circuit explained in *Hernandez*, "[w]hile the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process: no person may be imprisoned merely on account of his poverty." 872 F.3d at 981. As explained above, the constitutional avoidance doctrine requires the Court to reach the same conclusion in the context of the detention of a non-citizen asylum-seeker pursuant to § 1225(b).

The cases cited by both Petitioners and Respondents make clear that the purpose of bond is to effectuate the government's legitimate purpose of ensuring the detainee's presence at future hearings, and that there must be a connection between the bond amount and that purpose. When a judge fails to consider ability to pay and alternative conditions of release and sets a bond amount plainly outside the reach of an individual's financial resources, such a decision amounts, for all practical purposes, to a denial of bond. The Court rejects Respondents' argument that Petitioners are requesting relief beyond clarification of the preliminary injunction. Petitioners have brought to the Court's attention conduct on the part of Respondents that amounts to a denial of bond for reasons estranged

from the government's interest in mitigating the risk of flight or danger to the community. As the court recognized in *Celestin*, denial of bond under such circumstances "contravenes the mandates and the logic of *Lora*." Transcript of Oral Argument at 8, *Celestin*, 17 Civ. 2419. For the reasons explained above, an IJ's failure to consider ability to pay and alternative conditions of release in setting bond also raises serious due process concerns.

The Court concludes that a requirement that IJs consider ability to pay and alternative conditions of release in setting the bond amount is implicit in the November 17, 2017, Decision. Because *Lora* and the Due Process Clause require such considerations, Petitioners' motion for clarification does not raise new claims and facts beyond the scope of the amended petition and the preliminary injunction.

## II. Petitioners' Motion is not Barred by 8 U.S.C. § 1226(e), and Petitioners are not Required to Satisfy Administrative Exhaustion Requirements

### A. Section 1226(e) Does Not Preclude Petitioners' Motion

Respondents argue that Petitioners' request for clarification is barred by 8 U.S.C. § 1226(e) because "an immigration judge's bond determination is not subject to judicial review." (Dkt. 76 at 11). Section 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." "Although 8 U.S.C. § 1226(e) bars judicial review of certain 'discretionary judgment[s],' that section does not deprive the Court of jurisdiction over [a detainee's] constitutional and statutory challenges to his detention." *Gordon v. Shanahan*, No. 15 CV. 261, 2015 WL 1176706, at *2 (S.D.N.Y. Mar. 13, 2015); *see Bogle v. DuBois*, 236 F. Supp. 3d 820, 822 (S.D.N.Y.

2017) ("If he were merely disputing the IJ's judgment, judicial review would be barred under 8 U.S.C. § 1226(e), which provides that the Attorney General's detention decisions are not subject to judicial review and may not be set aside by a court.").

Respondents mischaracterize Petitioners' request for relief. Petitioners are not seeking judicial review of the IJs' decisions; rather, Petitioners ask this Court to clarify whether, per the Court's November 17, 2017, Decision, an IJ, once he or she has determined that release on bond is appropriate, must consider the financial circumstances of each subclass member and alternatives to detention in setting the amount of bond. (*See* Dkt. 67-1). In other words, the question is not whether the IJ could or should have considered those factors in setting the amount of bond, but whether the IJ *must* have done so to properly carry out the *Lora*-style hearings required by this Court's preliminary injunction. This request does not challenge a "discretionary judgment" encompassed by § 1226(e). *Demore*, 538 U.S. at 516. Rather, Petitioners are either entitled to these considerations pursuant to this Court's interpretation of the bond hearing requirement implicit in 8 U.S.C. § 1225(b), or they are not. Since the Court premised its November 17, 2017, Decision upon the constitutional avoidance doctrine, Petitioners' current motion to clarify seeks to vindicate these statutorily-derived process rights, and thus falls outside the scope of § 1226(e).

At oral argument, Respondents' counsel represented that the transcripts of the IJ bond hearings demonstrated that Petitioners had raised the issues of alternative release conditions and ability to pay at the *Lora* bond hearings, and thus, to the extent the issue was raised, the Court is without jurisdiction to review this application. Petitioners' counsel

responded that the IJs presiding over the *Lora* bond hearings did not inquire into these issues, and rejected counsel's attempts to request reconsideration of the bond amount on this ground once the bond amount was set. (*See* Dkt. 67-4).

As noted above, Respondents have filed transcripts from the *Lora*-style bond hearings of five subclass members. The Court has reviewed those transcripts and has determined that Petitioners raised the issue of whether the respective subclass members could afford the bond amount at several of these hearings. However, the question of whether that issue was "raised" is wholly different from the question of whether the IJ gave it meaningful consideration. In setting the bond amount in each case, the IJ made no mention of the detainee's ability to pay the bond. Accordingly, the Court does not find that the submitted transcripts rebut Petitioners' contention that the IJs did not consider alternative conditions of release or the subclass members' financial circumstances in setting the bond amount.

Therefore, the Court concludes that § 1226(e) does not bar the relief sought by Petitioners' motion to clarify.

**B.     Petitioners Were Not Required to Exhaust Administrative Remedies**

Respondents contend that even if § 1226(e) does not operate as a bar to Petitioners' request for relief, Petitioners are foreclosed from making this motion because they have failed to exhaust their administrative remedies. (Dkt. 76 at 12-15). In reply, Petitioners argue that the doctrine of administrative exhaustion is not applicable to their motion for clarification, and, even if it were, any failure to exhaust administrative remedies should be

excused because exhaustion would have been futile. (Dkt. 78 at 10-12). The Court agrees with Petitioners in both respects.

> **1.     Petitioners' Request for Clarification is Appropriately Before this Court in the First Instance**

Petitioners' reply papers rely upon the recent decision in *Enoh v. Sessions*, No. 16-CV-85(LJV), 2017 WL 2080278 (W.D.N.Y. May 15, 2017), *appeal withdrawn*, No. 17-1236, 2017 WL 6947858 (2d Cir. Dec. 7, 2017), in which the district court had previously issued a "conditional order" upon the petitioner's habeas petition requiring "the government to comply with certain conditions, including providing the petitioner with a *Lora* bond hearing. . . ." *Id.* at *2. After a bond hearing was held—and the petitioner was denied bond—he returned to federal court, claiming that the IJ had applied the wrong legal standard of proof during the hearing. *Id.* at *1. Ultimately, the district court reached the merits of the petitioner's claim, concluding that "the IJ failed to apply the clear and convincing standard." *Id.* at *10. The district court also concluded that the petitioner was not required to exhaust his administrative remedies. Although the petitioner had appealed his denial of release on bond to the BIA, the court recognized that the petitioner's application challenged the government's compliance with the prior conditional writ order, which did not raise any new claim in federal court. *Id.* at *3. As the district court aptly stated, "if exhaustion or a new petition were required simply to challenge compliance with an order requiring a *Lora* bond hearing, it would result in the very harm that *Lora* should prevent: 'prolonged' detention without due process during lengthy and backlogged removal proceedings." *Id.*; *see Argueta Anariba v. Shanahan*, No. 16-CV-1928 (KBF),

2017 WL 3172765, at *4 n.3 (S.D.N.Y. July 26, 2017) (stating that exhaustion of administrative remedies was not required where the petitioner challenged the adequacy of the *Lora* bond hearing that had been previously ordered by the court).

The Court finds the *Enoh* court's rationale equally applicable to the instant matter. Here, as already noted above, Petitioners' motion does not raise any new claim for relief. Petitioners have merely challenged Respondents' compliance with this Court's November 17, 2017, Decision by requesting explicit clarification of its scope and effect. Without question, this Court has jurisdiction to clarify its own orders. *See Meinhold*, 34 F.3d at 1480 n.14; *Wash. Metro. Area Transit Comm'n*, 985 F. Supp. 2d at 29; *see also Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO*, 364 U.S. at 647; *Cullman Ventures, Inc.*, 1989 WL 94902, at *3. Requiring Petitioners to appeal a bond determination to the BIA in order to argue that the IJ misinterpreted the scope and effect of this Court's own November 17, 2017, Decision would not serve any of the purposes of administrative exhaustion. *See Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003) (noting that the purposes of the "judicial exhaustion doctrine . . . include protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary"). Indeed, it would be fair to conclude that such a requirement would only serve to *undermine* the principles of due process outlined in *Lora, see Enoh*, 2017 WL 2080278, at *3—the very same conceptual underpinnings that form the foundation of this Court's November 17, 2017, Decision.

Therefore, because Petitioners do not raise any new claims in this action, administrative exhaustion is not required before this Court can entertain a motion requesting that it clarify its own prior grant of injunctive relief.

## 2. In the Alternative, Administrative Exhaustion is Excused Due to Futility

"There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter." *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) (citing *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)); *see* 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals. . . ."). Where, as here, "an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies." *Beharry*, 329 F.3d at 62. Exemption from prudential administrative exhaustion requirements is permitted where "'(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Id.* (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

Indeed, "courts may waive a judicially created exhaustion requirement where pursuing administrative remedies would be futile or where the agency has predetermined the issue before it." *Araujo-Cortes*, 35 F. Supp. 3d at 538; *see Cave v. E. Meadow Union*

*Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy."). Where the pursuit of "available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the [petitioner] from the requirement." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).

The Court finds that even if Petitioners were required to exhaust their administrative remedies, their failure to do so is excused because exhaustion would be futile. The Ninth Circuit was recently faced with the same question in *Hernandez*. In that case, the court determined that the BIA had previously held that a detainee's ability to pay the bond amount was not relevant to the bond calculation. *Hernandez*, 872 F.3d at 989. Based on a review of several BIA decisions, this Court agrees that the BIA has predetermined that a detainee's financial circumstances is not a required consideration when setting the bond amount. *See In Re: Manuel Balbuena Rivera A.K.A. Manuel Rivera-Balbuena*, A091 878 213, 2010 WL 691275, at *1 (BIA Feb. 16, 2010) ("[T]he test for determining the proper bond amount is not whether the respondent is financially capable of posting bond, but whether the amount of bond is reasonably calculated to assure his appearance for future proceedings or, if necessary, for removal."); *In re Castillo-Cajura*, A089 853 733, 2009 WL 3063742, at *1 (BIA Sept. 10, 2009) ("[A]n alien's ability to pay the bond amount is not a relevant bond determination factor."); *In Re: Mario Sandoval-Gomez*, A092 563 965, 2008 WL 5477710, at *1 (BIA Dec. 15, 2008) (same). Moreover, *Hernandez* also notes that another recent unpublished BIA decision indicates that "'an Immigration Judge is not

required to consider an alien's ability to pay when setting a bond.'" *Hernandez*, 872 F.3d at 1003 n.15; *see Araujo-Cortes*, 35 F. Supp. 3d at 538 (finding that an appeal to the BIA would have been futile where the BIA had rejected the petitioner's arguments in prior cases); *Sulayao v. Shanahan*, No. 09 Civ.7347(PKC), 2009 WL 3003188, at *3 (S.D.N.Y. Sept. 15, 2009) ("Appealing this decision to the BIA would be futile because the BIA recently reaffirmed the interpretation of section 1226(c) which subjects aliens like petitioner to mandatory detention."); *see also Rivera v. Holder*, 307 F.R.D. 539, 552 (W.D. Wash. 2015) (finding that "[o]ther courts have found unpublished BIA holdings highly probative of whether the Board has come to a decision on an issue").

The Court recognizes that the district court in *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751 (S.D.N.Y. Jan. 23, 2017), reached the opposite conclusion. In that case, the petitioner also argued that the exhaustion of administrative remedies would be futile, citing "several BIA decisions rejecting the relevance of ability-to-pay considerations in bond determinations." *Id*. at *2. However, the district court was persuaded by the respondents' citation to "multiple cases in which the BIA has reduced bond amounts on appeal," and the fact that the factors used in calculating bond amounts are "nonexclusive"; thus, the "ability to pay" could be reviewed by the BIA in determining whether bond is excessive. *Id*. However, *Paz Nativi* is distinguishable from the circumstances of the present action.

Unlike *Paz Nativi*, where the court ruled directly upon the petitioner's habeas petition and request for injunctive relief, the unique procedural posture of Petitioners' motion undermines the necessity of prudential administrative exhaustion. Here, Petitioners

seek clarification of an existing preliminary injunction order issued by this Court. (Dkt. 67). It would be counterintuitive to require Petitioners to appeal a bond determination to the BIA in order to argue, in the first instance, that the IJ misinterpreted the scope and effect of this Court's own November 17, 2017, Decision. As stated above, such a requirement would not serve any of the purposes of prudential exhaustion.

In addition, the *Paz Nativi* decision indicates that "the immigration judge relied on the bond determination factors outlined in [*Guerra*]; she did not take into account [the petitioner]'s ability to pay." *Paz Nativi*, 2017 WL 281751, at *1. Nowhere in that decision does the court mention the mandates set forth in *Lora*. As noted above, *Guerra* appears to be the leading BIA decision relating to bond calculations. However, while the *Guerra* factors may be sufficiently broad to permit the IJ's consideration of alternatives to detention and a detainee's ability to pay, the case law certainly does not *require* the IJ to consider those factors. *See Guerra*, 24 I. & N. Dec. at 40. Instead, the *Guerra* standard simply sets forth nine factors that, in the IJ's "broad discretion," may or may not receive consideration in any given instance. *See id.*; *see also Hernandez v. Lynch*, No. EDCV 16-00620-JGB (KKx), 2016 WL 7116611, at *29 n.16 (C.D. Cal. Nov. 10, 2016) ("[E]ven if the ability to pay is a discretionary factor Immigration Judges may consider when determining bond[,] . . . this is irrelevant to [the p]laintiffs' contention that both the ability to pay and alternatives to detention must be considered in bond determinations."), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (emphasis in original). The issue presented by Petitioners' motion is whether Respondents were *obligated* to take such considerations into account in setting bond during a *Lora*-style hearing.

Furthermore, to the extent that the *Paz Nativi* court reasoned that the BIA "could consider the ability-to-pay issue more broadly" or "could consider ability to pay as a factor in bond determinations" under the *Guerra* standard, the BIA decisions cited above demonstrate that *Guerra* has not yet been construed so expansively. *See Hernandez*, 872 F.3d at 1003 n.15 (rejecting "the government's contention that the cases cited above do not reflect current policy as well as its speculation that the BIA 'may decide to further clarify the *Guerra* standard'"). In addition, the cases cited by Respondents for the proposition that the BIA may reduce the amount set for bond do not suggest that the BIA considers a detainee's financial circumstances as a relevant factor; rather, they merely reiterate that the "amount of bond should be reasonably calculated to insure an alien's presence at future proceedings." *In Re: Jesus Gomez A.K.A. Carlos Alvarez*, A095 811 474, 2010 WL 1607087, at *1 (BIA Mar. 23, 2010) (noting also that bond calculations "should not be used as a punitive measure"); *In Re: Garaycochea, Javier Santiago*, A79-616-114, 2006 WL 901383, at *1 (BIA Feb. 22, 2006) ("[A] bond is set by an immigration judge according to the assessment of the amount needed to motivate the respondent to appear in light of relevant considerations."); *In Re: Mahmoud Mohamed Harkous*, A77 070 695, 2004 WL 2943563, at *1 (BIA Nov. 2, 2004) (reducing the bond as generally excessive "[g]iven the respondent's lack of danger to the community and the lack of flight risk").[3]

---

[3] Respondents do not specifically contend that Petitioners' argument for the mandatory consideration of alternative conditions of release should also have been made, in the first instance, in an appeal before the BIA. However, Respondents take the position that IJs "are not required to consider . . . alternatives to detention when setting bail" as well as a detainee's "ability to pay." (Dkt. 76 at 17 (citing *In Re: Luis Navarro-Solajo A.K.A. Luis Solajo-Navarro A.K.A. Solano Solao-Navarro*, A087 966 841, 2011 WL 1792597, at

Therefore, the Court holds, in the alternative, that Petitioners are excused from satisfying the prudential administrative exhaustion requirement because any appeal to the BIA would have been futile in this case.

## III. Barrios Ramos is Not Precluded From Seeking Clarification of the Court's Original Order Under Standing Principles

Respondents argue that Barrios Ramos does not have standing to assert the "new claims" set forth in Petitioners' motion because he "has not had a bond hearing" and thus, "he cannot claim to have suffered the injury that supports Petitioners' new question for relief." (Dkt. 76 at 18). Respondents also argue that Barrios Ramos never had a "personal interest" in these "new claims," and thus, the "voluntary cessation exception and inherently transitory exceptions to the mootness doctrine" are inapplicable. (*Id.* at 18 n.7).

To establish standing under Article III of the United States Constitution, "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The Second Circuit has stated that to determine whether a party has standing, the court 'must look to the facts and circumstances as they existed at the time [the] suit was initiated.'" *Digizip.com, Inc. v.*

---

*1 n.2 (BIA Apr. 13, 2011))). Therefore, it appears that an administrative appeal contending that alternative conditions of release *must* have been considered in setting bond would have been futile as well. *See Hernandez*, 2016 WL 7116611, at *29 n.16. Furthermore, for the same reasons stated above regarding the subclass members' ability to pay, requiring Petitioners' request for clarification of this Court's own November 17, 2017, Decision to be heard before the BIA in the first instance fails to serve any of the principles underlying the application of prudential exhaustion. *See Beharry*, 329 F.3d at 62.

*Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 675 (S.D.N.Y. 2015) (quoting *Etuk v. Slattery*, 936 F.2d 1433, 1440-41 (2d Cir. 1991)); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (standing "must exist at the commencement of the litigation"). The principles of mootness and standing both arise from the "case or controversy" requirement of Article III. *Etuk*, 936 F.2d at 1441. "While standing focuses on the status of the parties when an action is commenced, the mootness doctrine requires that the plaintiffs' claims remain alive throughout the course of the proceedings." *Id.*

Respondents' standing argument rests upon an erroneous premise: that Petitioners' motion raises "new claims" separate and apart from those asserted in the amended petition or the motion for preliminary injunction. (Dkt. 76 at 18). As already noted, Petitioners do not make any new or unrelated requests for relief. At the time this action was commenced, Barrios Ramos had passed a credible fear interview and had been detained for over six months. (Dkt. 17-1 at 2). As such, the fact that Barrios Ramos has since been released from custody "has no impact on his standing to seek injunctive relief." *See Hernandez*, 2016 WL 7116611, at *12; *Clarkson v. Coughlin*, 783 F. Supp. 789, 794 & n.5 (S.D.N.Y. 1992) (noting "no dispute" as to whether standing was established at the commencement of the action where the plaintiff was incarcerated at the time she filed her class action complaint, and was then paroled); *see also Maphorisa v. Dist. Dir., ICE*, No. CIV. 3:CV-09-0298, 2010 WL 598451, at *2 (M.D. Pa. Feb. 17, 2010) ("When a habeas petitioner has been released from custody after filing a petition, the relevant inquiry becomes whether the case still presents a case or controversy under Article III, § 2 of the United States Constitution." (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998))).

Therefore, the Court concludes that Article III standing principles do not preclude Barrios Ramos from asserting the relief sought by Petitioners' motion to clarify.

## CONCLUSION

For the foregoing reasons, Petitioners' motion for clarification (Dkt. 67) is granted. The Court clarifies that the November 17, 2017, Decision requires that once an IJ has determined that a detainee should be released on bond, he or she must consider the financial circumstances of each subclass member and alternative conditions of release in setting the amount of bond. Accordingly,

IT IS HEREBY ORDERED that for all subclass members provided a bond hearing pursuant to this Court's November 17, 2017, Decision, the IJ, when setting the terms of any subclass member's release at a bond hearing, must consider alternative conditions of release and the individual's ability to pay; and it is further

ORDERED, that for those subclass members who have already received a bond hearing pursuant to the November 17, 2017, Decision, and who remain detained notwithstanding an IJ's determination that release on bond would be appropriate, bond hearings must be recalendared and the record reopened for the IJ to consider alternative conditions of release and the individual's ability to pay; and it is further

ORDERED, that counsel for Respondents shall notify Class Counsel of the date and location of each bond hearing set pursuant to this Decision and Order at least five days in advance of the hearing.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 9, 2018
Rochester, New York