UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
SEP 24 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

HANAD ABDI and JOHAN BARRIOS RAMOS,
on behalf of himself and all others similarly situated,

Petitioners,

v.

KEVIN MCALEENAN, in his official capacity as
Acting Secretary of U.S. Department of Homeland
Security; THOMAS BROPHY, in his official
capacity as Acting Director of Buffalo Field Office
of Immigration and Customs Enforcement;
JEFFREY SEARLS, in his official Capacity as
Acting Administrator of the Buffalo Federal
Detention Facility; and WILLIAM BARR, in his
official capacity as Attorney General of the United
States,

Respondents.

**DECISION AND ORDER**

1:17-CV-00721 EAW

## INTRODUCTION

The instant matter involves a certified subclass of asylum-seekers who have

demonstrated a credible fear of persecution or torture in their respective homelands. Each

has been taken into custody and detained at the Buffalo Federal Detention Facility in

Batavia, New York, pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). Each has been imprisoned

in a maximum-security facility for more than six months without a bond hearing while

actively seeking admission into the United States.

This Court previously certified the subclass and granted a preliminary injunction

requiring that bond hearings be provided to the subclass. *See Abdi v. Duke*, 280 F. Supp.

- 1 -

3d 373 (W.D.N.Y. 2017); *Abdi v. Duke*, 323 F.R.D. 131 (W.D.N.Y. 2017). At the time, the Ninth Circuit Court of Appeals and the majority of district courts in the Second Circuit had imposed a temporal limitation on § 1225(b) through the canon of constitutional avoidance. *See Abdi*, 280 F. Supp. 3d at 390-93. However, the Supreme Court subsequently held that § 1225(b) cannot reasonably be interpreted to require a bond hearing after six months of detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842-46 (2018). The Supreme Court's decision in *Jennings* did not address the constitutional arguments raised in that case, and the Supreme Court remanded those issues for the Ninth Circuit to consider in the first instance. *See id.* at 851.

Pending before the Court are Respondents' motion to vacate this Court's preliminary injunction order (Dkt. 91) and motion to decertify the subclass (Dkt. 102), and Petitioners' motion to enforce the preliminary injunction order (Dkt. 122). These motions directly confront several questions left open in *Jennings*, including whether asylum-seekers detained pursuant to § 1225(b)(1)(B)(ii) are entitled to due process protections and, if so, whether the class action device is the appropriate mechanism to resolve Petitioners' due process challenges. Respondents also contend that this Court is without jurisdiction to issue class-wide injunctive or declaratory relief pursuant to 8 U.S.C. § 1252(f)(1).

Assuming *arguendo* that the subclass enjoys constitutional protections, the Court concludes that the subclass no longer satisfies the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure. As a result, the subclass must be decertified and the preliminary injunction vacated. The Court need not, and does not, decide whether these

asylum-seekers have Fifth Amendment due process rights. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). Furthermore, in light of this Court's decision to decertify the subclass, Respondents' position that the Court does not have jurisdiction to issue class-wide injunctive or declaratory relief pursuant to § 1252(f)(1) is a moot point and is not addressed.

For the following reasons, Respondents' motion to decertify the subclass (Dkt. 102) is granted. Accordingly, the Court's preliminary injunction order granting class-wide relief in favor of the now decertified subclass is vacated, and Respondents' motion to vacate the preliminary injunction (Dkt. 91) and Petitioners' motion to enforce the preliminary injunction (Dkt. 122) are both denied as moot.

## BACKGROUND & PROCEDURAL HISTORY

The Court has issued several decisions relating to the subject matter of this case, familiarity with which is assumed for purposes of this Decision and Order. The Court has summarized the key details below.

### I.  The Court's Preliminary Injunction

Petitioners Hanad Abdi and Johan Barrios Ramos ("Petitioners") brought this action seeking relief on behalf of themselves individually and on behalf of a proposed class of similarly situated asylum-seekers held at the Buffalo Federal Detention Facility in Batavia, New York. (Dkt. 17). On November 17, 2017, the Court issued a Decision and Order denying Respondents' motion to dismiss and granting Petitioners' motion for a preliminary

injunction. *See Abdi*, 280 F. Supp. 3d 373. The Court ordered Respondents to immediately adjudicate or readjudicate the parole applications of all members of the putative class of asylum-seekers detained at the Buffalo Federal Detention Facility in conformance with their legal obligations, including their obligations under ICE Directive No. 11002.1: *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture* (Dec. 8, 2009) (the "ICE Directive"). The Court also ordered Respondents to provide individualized bond hearings to members of the putative subclass who were detained for six months or more, pursuant to 8 U.S.C. § 1225(b).[1]  In granting the preliminary injunction, the Court concluded "that Petitioners are likely to satisfy the Rule 23(a) prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation." *Abdi*, 280 F. Supp. 3d at 401 (quotation omitted).

## II.    The Court's Subsequent Class Certification and Clarification Orders and the Supreme Court's Decision in *Jennings v. Rodriguez*

Consistent with its findings in granting the preliminary injunction, on December 19, 2017, the Court issued a Decision and Order granting Petitioners' motion for class certification. *See Abdi*, 323 F.R.D. 131. Specifically, the Court defined the certified subclass as follows:

> All arriving asylum-seekers who are or will be detained at the Buffalo Federal Detention Facility, have passed a credible fear interview, and have been detained for more than six months without a bond hearing before an immigration judge.

---

[1]     The pending motions concern only the continued viability of this Court's preliminary injunction and class certification orders as they pertain to the subclass.

*Id.* at 145.  On January 11, 2018, Respondents filed an interlocutory appeal of the Court's Decision and Order granting the preliminary injunction.  (Dkt. 74).

On February 9, 2018, the Court issued another Decision and Order, which clarified the preliminary injunction to require "that once an [immigration judge ('IJ')] has determined that a detainee should be released on bond, he or she must consider the financial circumstances of each subclass member and alternative conditions of release in setting the amount of bond."  *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 345 (W.D.N.Y. 2018).  As a result, the Court ordered that "bond hearings must be recalendared and the record reopened" for any subclass member "who remain[ed] detained notwithstanding an IJ's determination that release on bond would be appropriate," so that "alternative conditions of release and the individual's ability to pay" were given consideration.  *Id.*  The Court also required Respondents to notify Class Counsel "of the date and location of each bond hearing . . . at least five days in advance of the hearing."  *Id.*  On February 15, 2018, Respondents filed an amended notice of interlocutory appeal.  (Dkt. 84).

On February 27, 2018, the Supreme Court issued its decision in *Jennings*, which rejected the Ninth Circuit's interpretation of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* (the "INA"), and held that § 1225(b) of the INA could not plausibly be construed to contain an implicit six-month time constraint at which point a bond hearing was statutorily required.  138 S. Ct. at 842-46.  In doing so, the Court determined that the canon of constitutional avoidance was not applicable because § 1225(b) mandated "detention of applicants for admission until certain proceedings have concluded," and "nothing in the statutory text impose[d] any limit on the length of detention."  *Id.* at 842.

In other words, because the plain text of § 1225(b) was not amendable to any other plausible construction, the constitutional avoidance canon of statutory interpretation did not apply. *See id.* at 844. However, the *Jennings* majority did not address whether the Constitution mandated periodic bond hearings and remanded the case for consideration of these constitutional arguments in the first instance.[2] *See id.* at 851.

## III. Respondents' Motions to Vacate the Preliminary Injunction and to Decertify the Subclass

On September 5, 2018, the Second Circuit remanded Respondents' appeal for "further consideration in light of the Supreme Court's decision" in *Jennings*. (Dkt. 90). On October 31, 2018, Respondents filed a motion to vacate that part of the Court's preliminary injunction that required individualized bond hearings for each subclass member held in immigration detention for six months or longer. (Dkt. 91). Respondents' application is based upon their interpretation of *Jennings*. (Dkt. 91-1 at 8-11). First, Respondents contend that *Jennings* suggests that this Court is without jurisdiction to issue class-wide injunctive relief pursuant to 8 U.S.C. § 1252(f)(1). (Dkt. 91-1 at 8-9). Because § 1252(f)(1) prohibits courts "other than the Supreme Court" from "enjoin[ing]" or "restrain[ing]" the operation of 8 U.S.C. §§ 1221-1232, *see* 8 U.S.C. § 1252(f)(1), Respondents contend that the preliminary injunction violates this provision by enjoining the operation of § 1225(b) (Dkt. 91-1 at 8-9). Second, Respondents contend that even if

---

[2]     The Ninth Circuit, in turn, has remanded those issues to the district court for it to consider in the first instance. *See Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018). The district court has not yet issued a subsequent decision addressing the parties' constitutional arguments.

the Court has jurisdiction to issue class-wide injunctive relief after *Jennings*, the basis for the instant injunction has been eliminated. (*Id.* at 9-11). Specifically, Respondents take the position that because 8 U.S.C. § 1225(b) cannot plausibly be interpreted as containing an implicit six-month time limit under the canon of constitutional avoidance, this Court's rationale for requiring a bond hearing after six months in immigration detention is no longer viable. (*Id.*).

On December 13, 2018, Respondents filed a motion to decertify the subclass. (Dkt. 102). Although Respondents address several issues in their motion papers, the *Jennings* decision serves as the impetus for this motion as well. (*See* Dkt. 102-1 at 8-12, 15-16). Respondents assert the same § 1252(f)(1) jurisdictional arguments raised in their motion to vacate. (*Id.* at 8-10). In addition, Respondents contend that § 1252(f)(1) also bars any class-wide *declaratory* relief because it would "essentially afford[] injunctive relief, serve[] as a basis for later injunctive relief, or [would be] identical to the injunctive relief sought." (*Id.* at 12; *see id.* at 10-12). Furthermore, Respondents argue that even if this Court has jurisdiction to grant Petitioners class-wide relief in any form, Petitioners' due process claims are not capable of a uniform or common resolution as required by Federal Rule of Civil Procedure 23. (*Id.* at 12-15). Finally, Respondents contend that because the subclass was originally certified based upon an incorrect construction of 8 U.S.C. § 1225(b), it should be decertified on that ground as well. (*Id.* at 15-16).

Although Petitioners oppose both motions (Dkt. 99; Dkt. 121), they do not dispute that the Supreme Court has eliminated the statutory basis for this Court's injunction and class certification orders as they relate to the subclass. Petitioners claim that their

entitlement to the type of individualized bond hearings required by this Court's prior orders is rooted in the Fifth Amendment's Due Process Clause. As such, they contend that the subclass members have a constitutional due process right to receive a bond hearing after six months or more of immigration detention. (Dkt. 99 at 14-30). Petitioners also argue that there are several reasons why this Court has jurisdiction to issue class-wide injunctive or, alternatively, declaratory relief. (*See id.* at 30-31; Dkt. 121 at 10-21). Finally, Petitioners contend that the subclass still satisfies the requirements of Federal Rule of Civil Procedure 23 and the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). (Dkt. 121 at 22-27).

## IV. Petitioners' Motion to Enforce the Preliminary Injunction

On March 18, 2019, Petitioners filed a motion to enforce the preliminary injunction and class reporting order. (Dkt. 122). Petitioners contend that Respondents are not taking appropriate measures to comply with this Court's prior orders. (*See* Dkt. 122-1). On April 30, 2019, the Court issued a Decision and Order granting Petitioners' motion to enforce in part, ordering limited discovery on the methodology used by Respondents to identify and report class members and any changes made or that will be made by Respondents to address the recurring errors in their identification of class members. (Dkt. 129). The Court reserved decision on the remaining aspects of Petitioners' motion to enforce. (*Id.*).

On June 10, 2019, the Court held oral argument on the pending motions. (Dkt. 141). The Court instructed the parties to meet and confer to address any remaining issues on Petitioners' motion to enforce and set a briefing schedule for the parties to identify any disputes relating to that motion that were left unresolved. The Court reserved decision on

the remaining issues. The parties subsequently filed additional submissions pertaining to Petitioners' motion to enforce that outlined what issues had been resolved and what issues remained outstanding. (Dkt. 142; Dkt. 143; Dkt. 144). Petitioners have also filed two letter submissions identifying additional case authorities in support of their opposition to Respondents' motions. (Dkt. 145; Dkt. 149). Respondents have responded to these supplemental filings and argue against the applicability of the case law identified by Petitioners. (Dkt. 146; Dkt. 150).

## DISCUSSION

I. ***Jennings* Represents an Intervening Change in Controlling Law that Warrants Reexamination of this Court's Class Certification Order**

### A.  Statutory Background for an "Arriving Alien"

"Section 1225(b) of Title 8, United States Code, sets forth procedures for the inspection and detention of individuals who are 'applicants for admission' to the United States." *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *2 (S.D.N.Y. Aug. 20, 2018) (quoting 8 U.S.C. § 1225(a)(1), (b)). These individuals are often labeled as "arriving aliens," a phrase that has been defined to include, *inter alia*, "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). Section 1225(b)(1) "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General in his discretion," while § 1225(b)(2) generally "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 138 S. Ct. at 837.

Section 1225(b)(1)(A) provides an initial screening process by which an immigration officer determines whether an arriving alien is inadmissible. "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process," *id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)), "unless the alien indicates either an intention to apply for asylum under section 1158 . . . or a fear of persecution," 8 U.S.C. § 1225(b)(1)(A)(i). If an arriving alien indicates an intent to apply for asylum or a fear of persecution, the immigration officer "shall refer the alien for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(ii). "If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution . . ., the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

The asylum-seekers who compose the subclass are detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). Because § 1225(b) does not require Respondents to afford bond hearings after six months of immigration detention, *see Jennings*, 138 S. Ct. at 842-46, "[t]he only statutory mechanism for release from § 1225(b) custody is found in 8 U.S.C. § 1182(d)(5)(A)," *Perez*, 2018 WL 3991497, at *2. Under that provision, an individual detained pursuant to § 1225(b) can be paroled "into the United States temporarily" by the Attorney General "in his discretion." 8 U.S.C. § 1182(d)(5)(A).

**B.    The Decertification of a Certified Class**

"[C]ertifications are not frozen once made." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013). "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "[A]

district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982); *see Monaco v. Stone*, 187 F.R.D. 50, 59 (E.D.N.Y. 1999) ("A class may be decertified if later events demonstrate that the reasons for granting class certification no longer exist or never existed.").

"Rule 23(c)(1)(C) requires courts to reassess . . . class rulings as the case develops, and to ensure continued compliance with Rule 23's requirements." *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014) (quotation and citation omitted). "'In opposing [a] decertification motion,' as in the original class certification analysis, plaintiffs 'retain[ ] the burden to demonstrate that these requirements were satisfied' by a preponderance of the evidence." *Rodriguez v. It's Just Lunch Int'l*, No. 07-CV-9227 (SHS), 2018 WL 3733944, at *2 (S.D.N.Y. Aug. 6, 2018) (alterations in original) (quoting *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016)). In general, a court "may not disturb its prior findings absent some significant intervening event, or a showing of compelling reasons to reexamine the question." *Doe v. Karadzic*, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000) (quotations and citation omitted); *see Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015) (same), *aff'd*, 829 F.3d 260 (2d Cir. 2016). "Compelling reasons 'include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012) (quoting *Doe*, 192 F.R.D. at 137), *aff'd sub nom. Gulino v. Bd. of Educ. of N.Y.C. Sch. Dist. of City of N.Y.*, 555 F. App'x 37 (2d Cir. 2014).

## C.     The Bond Hearing Requirement Before *Jennings*

At the time this Court granted the preliminary injunction, the Ninth Circuit required bond hearings to be held for aliens detained pursuant to 8 U.S.C. § 1226(c) and 8 U.S.C. § 1225(b), as a matter of statutory interpretation. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013).   Moreover, the Second Circuit had adopted the Ninth Circuit's approach—at least as it pertained to aliens detained pursuant to § 1226(c)—and imposed a bright-line rule that those alien detainees be afforded a bond hearing after six months of immigration detention. *See Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) ("[I]n order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018).   Furthermore, as the Court recognized when it granted the preliminary injunction in this case, a majority of district courts in this Circuit applied *Lora* and *Rodriguez* to impose a six-month bond hearing requirement in favor of arriving aliens detained pursuant to § 1225(b). *Abdi*, 280 F. Supp. 3d at 392-93.

In granting Petitioners' request for injunctive relief, this Court discerned persuasive reasons to apply the rationale endorsed by these courts to the subclass at issue. In addition, the Court concluded that class certification was likely, *id.* at 401, and ultimately the Court certified the subclass, *Abdi*, 323 F.R.D. 131. Accordingly, the Court ordered Respondents to afford a bond hearing in all instances where an asylum-seeker had demonstrated a credible fear of persecution or torture, was detained at the Buffalo Federal Detention Facility, and had been held in immigration detention for six months or more. *Abdi*, 280 F.

Supp. 3d at 411. This temporal bright-line rule was the linchpin to the Court's conclusion that individualized bond hearings could be applied "across-the-board to each putative class member," *id.* at 403 n.10, separating those entitled to a bond hearing from those who were not.

### D.    The Bond Hearing Requirement After *Jennings*

*Jennings* held that § 1225(b) does not contain an implicit six-month time limit at which point a bond hearing must be held, thus eliminating the statutory six-month bright-line rule formulated in *Rodriguez* and adopted by *Lora*. 138 S. Ct. at 844. As a result, the Supreme Court subsequently granted certiorari in *Lora*, vacated the judgment, and remanded the case for "further consideration" in light of its decision in *Jennings. Shanahan v. Lora*, 138 S. Ct. 1260 (2018). On remand, the Second Circuit dismissed the case as moot because the petitioner in that matter had been granted a cancellation of removal. *See Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

The Second Circuit has not addressed, post-*Jennings* and post-*Lora*, the standard to be utilized by courts in addressing procedural due process claims for aliens detained in the immigrant habeas context. However, the overwhelming majority of district courts within the Circuit to have addressed the issue in the context of 8 U.S.C. § 1226(c)—pertaining to the detention of criminal aliens—have adopted a case-by-case approach where "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore v. Kim*, 538 U.S. 510, 532 (2003)). The case-by-case approach is an "as-applied, fact-based analysis . . . derived from the Supreme Court's decisions in

[*Zadvydas v. Davis*, 533 U.S. 678 (2001)] and *Demore.*" *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018); *see Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (noting that the *Sajous* framework has been "overwhelmingly adopted" in the Southern District of New York (quotation omitted)); *Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018) (same); *c.f. Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018) (utilizing both a multi-factor test and the traditional procedural due process analysis articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976)), *enforcement granted sub nom. Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *10 n.7 (S.D.N.Y. Nov. 21, 2018) (concluding that "[t]he Mathews test is consistent with the approach of . . . considering immigration-specific factors for the procedural due process analysis," and the majority of courts in this Circuit seem to have adopted the fact-based inquiry approach), *appeal withdrawn*, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019).

The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified in the § 1226(c) context can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral*, 331 F. Supp. 3d at 261. These factors require consideration of multiple variables in determining whether a detainee has been held for an unreasonably lengthy period of time. While "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months," *Sajous*, 2018 WL 2357266, at *10, "the sheer length of the proceedings is not alone determinative of reasonableness," *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018) (quoting *Young v. Aviles*, No. 15-CV-4545 (JMF), 2015 WL 4579204, at *1 (S.D.N.Y. July 29, 2015)), *appeal withdrawn*, No. 18-2881, 2019 WL 1503029 (2d Cir. Mar. 25, 2019). For example, while "'aliens should not be punished for pursuing avenues of relief and appeals[,]' . . . evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (first alteration in original) (quoting *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018)), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

Some district courts in this Circuit have also applied the multi-factor test to aliens detained pursuant to § 1225(b) and concluded that due process requires an individualized bond hearing. *See, e.g.*, *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (applying factors set forth in *Sajous* to conclude that the petitioner's detention for nearly 10 months pursuant to § 1225(b) without a bond hearing was unreasonable and unconstitutional as applied to him), *appeal filed*, Case No. 18-3714 (2d Cir. Dec. 11, 2018); *Perez*, 2018 WL 3991497, at *4-5 (applying factors set forth in *Sajous* to conclude that the petitioner's detention for nearly a year pursuant to § 1225(b) without a bond hearing was

unreasonable and unconstitutional as applied to him); *see also Wang v. Brophy*, Case # 17-CV-6263-FPG, 2019 WL 112346, at *3 (W.D.N.Y. Jan. 4, 2019) (holding that detention pursuant to § 1225(b) for two years without a bond hearing was unreasonable and unconstitutional as applied to petitioner), *appeal dismissed*, 2019 WL 4199901 (2d Cir. Aug. 1, 2019); *Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (holding that detention pursuant to § 1225(b) for 34 months without a bond hearing violated the petitioner's due process rights). However, some district courts have concluded that due process does not require a bond hearing for aliens detained pursuant to § 1225(b) and the procedure for discretionary parole pursuant to 8 U.S.C. § 1182(d)(5)(A) is sufficient to satisfy any due process concerns. *See Alexandre v. Decker*, No. 17 Civ. 5706 (GBD) (KHP), 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (parole process pursuant to 8 U.S.C. § 1182(d)(5)(A) satisfied due process for alien detained pursuant to § 1225(b)); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648-49 (S.D.N.Y. 2018) (holding that due process did not afford alien detained pursuant to § 1225(b) a bond hearing; rather due process "is whatever procedure has been 'authorized by Congress'" which in the case of the petitioner was parole at the discretion of the Attorney General). At least one court in this district has concluded that while due process does not require an individualized bond hearing for an alien detained pursuant to § 1225(b), the petitioner was entitled to "a rigorous custody review" that mandated more than parole review in the discretion of the Attorney General. *Clerveaux v. Searls*, No. 18-CV-1131, 2019 WL 3457105, at *15-17 (W.D.N.Y. July 31, 2019).

### E.    The Six-Month Bright-Line Rule Is No Longer Viable

Prior to *Jennings*, most courts in this Circuit concluded that after six months an individualized bond hearing was statutorily required for aliens detained pursuant to § 1226(c) or § 1225(b).  However, at least in the context of aliens detained pursuant to § 1226(c), that six-month hard-and-fast statutory rule has been replaced by a malleable and flexible due process analysis.  *See Lankford v. Idaho*, 500 U.S. 110, 121 (1991) ("Due process is not a mechanical instrument.  It is not a yardstick.  It is a process.  It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process." (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 163 (1951) (Frankfurter, J., concurring))).  The law is unsettled as to whether due process may require individualized bond hearings for those detained pursuant to § 1225(b).  But assuming *arguendo* for purposes of this Decision and Order that it does, the six-month bright-line rule that this Court relied upon in granting its preliminary injunction and certification of the subclass is no longer viable.

The Court is not unsympathetic to the circumstances confronting the subclass members and does not quarrel with Petitioners' contention that "[s]ix months is a significant amount of time to spend incarcerated."  (Dkt. 99 at 27); *see Muniz v. Hoffman*, 422 U.S. 454, 477 (1975) ("It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual. . . ."); *see also Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 477 (3d Cir. 2015) (nine months in civil immigration detention "strain[s] any common-sense definition of a limited or brief civil detention"), *abrogated in part and on other grounds by Jennings*, 138 S. Ct. 830; *see generally Guerrero-Sanchez v.*

*Warden York Cty. Prison*, 905 F.3d 208, 220 n.9 (3d Cir. 2018) ("[T]he reality is that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures." (quotation and original alteration omitted)). According to Petitioners' undisputed factual submissions, "the mental health of [asylum-seeker] detainees deteriorates over time and substantially worsens after detention of greater than six months." (Dkt. 100 at 15). Petitioners have also submitted unrefuted evidence suggesting that even when asylum claims are diligently pursued, they may "easily take more than six months" before reaching a conclusion. (*See* Dkt. 99-2 at ¶ 20).

It may very well be the case that an individualized due process analysis would require a bond hearing for the majority of asylum-seekers who form the subclass after six months of immigration detention. Nonetheless, other than identifying "bright-line constitutional rules" in different—and inapposite—"custodial and detention contexts," Petitioners have failed to explain why the flexible notions of due process categorically *require* a bond hearing after the passage of six months' time. While certain principles arising out of criminal jurisprudence may be somewhat analogous to civil immigration detention, the cases relied upon by Petitioners do not compel the conclusion that a six-month bright-line rule is mandated by the Constitution. *Cf. Maryland v. Shatzer*, 559 U.S. 98, 111-12 (2010) (holding that where a defendant "has been out of custody for two weeks before the contested interrogation, the court is spared the fact-intensive inquiry into whether he ever, anywhere, asserted his *Miranda* right to counsel"); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter," be sufficiently prompt for Fourth

Amendment purposes); *Baldwin v. New York*, 399 U.S. 66, 70-74 (1970) (holding that the Sixth Amendment requires a jury trial for any crimes punishable by imprisonment for more than six months). Indeed, the six-month rule in *Baldwin* was "based on 'the existing laws and practices in the Nation' with regard to jury trials," *Reid v. Donelan*, 390 F. Supp. 3d 201, 218 (D. Mass. 2019) (quoting *Baldwin*, 399 U.S. at 70), *appeals filed,* No. 19-1787 (1st Cir. Aug. 13, 2019), No. 19-1900 (1st Cir. Sept. 23, 2019); *see Baldwin*, 399 U.S. at 71-72 (stating that with "few exceptions, crimes triable without a jury in the American States since the late 18th century were also generally punishable by no more than a six-month prison term," and that "[i]n the entire Nation, New York City alone denies an accused the right to interpose between himself and a possible prison term of over six months, the commonsense judgment of a jury of his peers"), and Petitioners "provide no reason why this historically based six-month cutoff should apply to the materially different context of immigration detention, especially given Congress's unique authority to legislate with regard to aliens," *Reid*, 390 F. Supp. 3d at 218 (citing *Demore*, 538 U.S. at 521). In other words, the holdings in the cases relied upon by Petitioners have little bearing on how long civil immigration detention may continue absent an opportunity for bail without offending due process principles.

Understandably, "bright-line rules provide clear guidance and ease of administration to government officials." *Lora*, 804 F.3d at 615. Petitioners are not incorrect in identifying this advantage to a six-month bond hearing requirement. *See, e.g.*, *Shatzer*, 559 U.S. at 110 ("[L]aw enforcement officers need to know, with certainty and beforehand, when renewed interrogation is lawful."); *McLaughlin*, 500 U.S. at 55-56 ("[I]t

is not enough to say that probable cause determinations must be 'prompt.' This vague standard simply has not provided sufficient guidance."). However, a bright-line rule would constrict the flexibility inherent to a due process inquiry and is inconsistent with the Supreme Court's teachings in *Jennings. See Cabral*, 331 F. Supp. 3d at 260 ("While the Supreme Court left open the issue of what requirements are imposed by the Due Process Clause of the Fifth Amendment, it would be inconsistent with the discussion of due process in *Jennings* to find a due process requirement of an automatic bond hearing after a detention of six months. Rather, the Supreme Court stressed the flexible nature of the Due Process Clause." (citation omitted)); *see also United States v. Salerno*, 481 U.S. 739, 748 (1987) (rejecting the "categorical" conclusion that "the Due Process Clause prohibits pretrial detention on the ground of danger to the community as a regulatory measure, without regard to the duration of the detention" in favor of a balancing analysis between "the Government's regulatory interest in community safety" and "an individual's liberty interest" (quotation omitted)).

Therefore, because the Supreme Court has eliminated the legal basis to *categorically* impose a six-month bond hearing requirement in the case of *every* alien detained pursuant to § 1225(b)(1)(B)(ii), *Jennings* represents an intervening change in controlling law warranting the reexamination of this Court's Decision and Order certifying the subclass pursuant to Rule 23.

## II. The Subclass No Longer Satisfies the Requirements of Rule 23(b)(2) and Must Be Decertified

Respondents' substantive decertification arguments are primarily based upon Rule 23(a)'s commonality requirement and the Supreme Court's decision in *Dukes*, 564 U.S. 338. Specifically, Respondents argue that because due process is a flexible concept, each subclass member's particular circumstances make uniform disposition of their claims impossible under the class-action device. (*See* Dkt. 102-1 at 12-15). Petitioners oppose Respondents' motion and argue that Respondents' assertions "ignore[] that whether due process requires bond hearings across the subclass, or only on an individual basis, is a common question in itself." (Dkt. 121 at 23).

In remanding the action, the *Jennings* Court advised the Ninth Circuit to "consider whether a Rule 23(b)(2) class action continues to be the appropriate vehicle for respondents' claims in light of" the Supreme Court's holding in *Dukes*. 138 S. Ct. at 851. In *Dukes*, the Court held that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." 564 U.S. at 360. *Jennings* cautioned that because

> some members of the certified class may not be entitled to bond hearings as a constitutional matter[,] . . . it may no longer be true that the complained-of "conduct is such that it can be enjoined or declared unlawful only as to all the class members or as to none of them."

138 S. Ct. at 852 (citation omitted) (quoting *Dukes*, 564 U.S. at 360).

Respondents raise similar arguments in their motion papers. They argue that "an individualized fact-specific inquiry" pursuant to the Due Process Clause is not susceptible to the class action device and thus, a single injunctive or declaratory judgment would not provide relief for each member of the subclass. (Dkt. 102-1 at 13). Respondents illustrate this point by arguing that "one particular subclass member may be denied parole and detained beyond six months for reasons that are completely inapplicable to another subclass member." (*Id.* at 14).

"A class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . ." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quotation omitted).

Petitioners strenuously contend that the subclass is still viable because any individual factual differences between the asylum-seekers are immaterial in this context as each subclass member is categorically entitled to the same process. (*See* Dkt. 121 at 24-25). Certainly, whether or not each subclass member is entitled to a bond hearing does not depend upon their individual likelihood of being granted bond, or even, ultimately, being granted asylum. *See generally Sajous*, 2018 WL 2357266, at *11 (in applying the multi-factor test, "[t]he Court need not inquire into the strength of" relevant defenses to removal, "it is sufficient to note their existence and the resulting possibility that the [p]etitioner will

ultimately not be removed, which diminishes the ultimate purpose of detaining the [p]etitioner pending a final determination as to whether he is removable"). However, to conclude that an individual detained pursuant to § 1225(b) is entitled to a bond hearing under due process principles is necessarily a fact-specific and individualized determination.

In granting certification of the subclass, the Court rejected Respondents' position that an analysis of each asylum-seeker's individual circumstances was necessary to afford the subclass the relief it sought. *Abdi*, 323 F.R.D. at 144. The Court reached this conclusion, in part, because the entitlement to a bond hearing was inextricably tied to each subclass member's time in immigration detention. *Id.* at 145 ("[The proposed subclass members have no responsibility to justify the availability of the bond hearing itself; once the six-month time limit has expired, it becomes Respondents' statutory obligation to hold a hearing. . . .")). The six-month temporal rule endorsed by *Lora* and *Rodriguez* was the adhesive that held the subclass together. While it may be possible for Petitioners to demonstrate that some subclass members have been detained for a constitutionally infirm period, Petitioners have not demonstrated that such is the case for *all* current *and* future subclass members. Any such determination is no longer automatically triggered by time in custody.

Petitioners contend that *Jennings* was principally concerned with how Rule 23(b)(2) and *Dukes* applied to the class at issue in that case, which included "both arriving asylum-seekers and lawful permanent residents returning from overseas travel," and not to a class similar to the subclass here, which "includes only [similarly situated] arriving asylum-

seekers." (Dkt. 121 at 27). This is an overly narrow view of the Supreme Court's admonishment. The *Jennings* Court believed that *Dukes* "may be relevant on remand because . . . some members of the certified class may not be entitled to bond hearings as a constitutional matter." *Jennings*, 138 S. Ct. at 852. This concern reflects the precise issue raised here: due to the variability and flexibility intrinsic to an individualized due process inquiry, the fact-specific circumstances of each alien will dictate whether each is or is not entitled to a bond hearing—assuming that each subclass member enjoys constitutional due process protections. Therefore, because Petitioners have failed to demonstrate that all current and future subclass members are entitled to a bond hearing after a certain period of time, even if some or even a significant majority of subclass members may be entitled to such relief, a single injunction may not issue in favor of this subclass. *See Dukes*, 564 U.S. at 360 (stating that "Rule 23(b)(2) applies only when *a single injunction* . . . would provide relief *to each member of the class*" (emphases added)).

In the alternative, Petitioners request that the Court issue a declaratory judgment, declaring that continued mandatory immigration detention for six months or more is unconstitutional as applied to each subclass member. However, the viability of any such declaratory judgment also hinges upon the existence of a six-month bright-line rule. In other words, for this declaratory relief to apply across-the-board to each subclass member, it is necessary to conclude that the Due Process Clause categorically requires that a bond hearing be held after six months' time in the custody of immigration authorities. Because, for the reasons stated above, the Constitution requires no such bright-line rule, Petitioners are unable to maintain a Rule 23(b)(2) class based upon their requested declaratory relief

for the same reasons that they are unable to do so based upon their requested injunctive relief. *See id.* (the indivisibility requirement of Rule 23(b)(2) requires that the conduct can be "declared unlawful only as to *all of the class members* or as to none of them" (emphasis added)); *see also* Fed. R. Civ. P. 23(b)(2) (providing that "final injunctive relief or corresponding declaratory relief" must be "appropriate respecting the class as a whole").

Petitioners urge the Court to follow *Reid v. Donelan*, No. CV 13-30125-PBS, 2018 WL 5269992 (D. Mass. Oct. 23, 2018) and deny Respondents' motion to decertify the subclass. The *Reid* case upheld the certification of a class of criminal aliens detained pursuant to 8 U.S.C. § 1226(c). In explaining why the class continued to satisfy the commonality requirement for class certification, the court stated:

> The Government may ultimately prevail on its merits argument that the Constitution requires an individualized determination of whether an alien's detention has become unreasonable. However, the class still presents the common threshold question of whether their detention after six months without a bail hearing or reasonableness review violates the Constitution. Even if the answer to that question is no, the class still meets the commonality requirement.

*Id.* at *5. However, Petitioners' reliance on *Reid* is misplaced because this Court has already determined that a six-month bright-line limitation does not survive *Jennings*.[3]

It can no longer be said that Respondents are acting in a manner generally applicable to all members of the subclass because while each subclass member has been detained for six months or longer, the individual circumstances of each asylum-seeker may preclude a

---

[3] In fact, the *Reid* court subsequently rejected the plaintiffs' arguments in favor of a bright-line six-month bond hearing requirement for criminal aliens detained pursuant to § 1226(c). *See Reid v. Donelan*, 390 F. Supp. 3d 201, 219 (D. Mass. 2019).

finding that Respondents have unconstitutionally prolonged their detention. In other words, even if each subclass members' detention has become "constitutionally suspect" that does not necessarily mean that it has become unconstitutionally prolonged in the absence of an opportunity to post bond. Without the benefit of the six-month temporal limitation, each subclass member's individual detention may be deemed constitutionally infirm at different points in time. Because this result would require multiple court orders or decrees, Rule 23(b)(2) is an inappropriate device to maintain class certification of the subclass as it is presently defined. *See Dukes*, 564 U.S. at 360 (stating that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant").

Due process is not intended to be applied in a mechanical or rigid fashion. Determining what process is due requires a case-by-case approach. An individualized inquiry, such as the multi-factor test described above, permits courts to consider the totality of each detainee's circumstances. The inherent flexibility of this approach is consistent with decades of Supreme Court precedent and the Court's cautionary words in *Jennings*. As one Second Circuit decision has held:

> Because of the possible variance in factual situations, it may well be that [the statute] is unconstitutional as applied to certain members of the purported class and yet may be constitutional as applied to others. Where such a line could be drawn is not readily apparent, and it would be much more appropriate to handle difficult constitutional questions arising from the application of the statute to varying fact-patterns on a case-by-case basis rather than in a class action.

*Dale v. Hahn*, 440 F.2d 633, 640 (2d Cir. 1971) (footnote omitted). This rationale applies with equal force to the facts presented here.

- 26 -

The Court does not mean to suggest that Petitioners are without any remaining recourse. The Court merely holds that the Fifth Amendment's Due Process Clause does not categorically require that bond hearings take place after six months of immigration detention, and that without this pre-*Jennings* temporal limitation, the subclass must be decertified pursuant to Rule 23(b)(2) and *Dukes*. Indeed, other courts confronting similar class-related issues permitted the plaintiffs in those actions to amend their pleadings and class definitions in light of the *Jennings* decision. *See Reid*, 2018 WL 5269992; *Rodriguez v. Robbins*, Case No. 2:07-cv-03239-TJH-RNB, Dkt. 514 (C.D. Cal. July 10, 2019). In fact, the *Reid* court issued declaratory class relief explaining the constitutional rights of the § 1226(c) class and granting a permanent injunction outlining the procedures to be afforded at any bond hearing held pursuant to that court's decree. *See Reid*, 390 F. Supp. 3d at 227-28.

Here, Petitioners have sought no such relief. While Petitioners have continuously requested injunctive and declaratory relief under both statutory and constitutional principles (Dkt. 17 at ¶¶ 14-15), the relief requested remains tailored for the period when a six-month bright-line rule remained good law in this Circuit. For the reasons outlined above, Petitioners' allegations are a relic of a now bygone era.

Because the subclass, as currently defined, is no longer certifiable under Rule 23(b)(2) in the absence of a categorical six-month bond hearing requirement, the Court grants Respondents' (Dkt. 102) motion to decertify the subclass and, consequently, vacates that part of the Court's preliminary injunction order which issued in favor of the now decertified subclass. Accordingly, Respondents' motion to vacate the preliminary

injunction (Dkt. 91) and Petitioners' motion to enforce the preliminary injunction (Dkt. 122) are both denied as moot.

## CONCLUSION

For the foregoing reasons, Respondents' motion to decertify the subclass (Dkt. 102) is granted, and the Court vacates that part of its preliminary injunction order which issued in favor of the now decertified subclass. Respondents' motion to vacate the preliminary injunction (Dkt. 91) and Petitioners' motion to enforce the preliminary injunction (Dkt. 122) are both denied as moot.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     September 24, 2019
           Rochester, New York